# GIBSON DUNN

Gibson, Dunn & Crutcher LLP

1050 Connecticut Avenue, N.W.
Washington, DC 20036-5306
Tel 202.955.8500
www.gibsondunn.com

Theodore B. Olson
Direct: +1 202.955.8668
Fax: +1 202.530.9575
TOlson@gibsondunn.com

October 11, 2013

**VIA CM/ECF**

Mr. Lyle W. Cayce, Clerk
U.S. Court of Appeals for the Fifth Circuit
F. Edward Hebert Building
600 South Maestri Place
New Orleans, LA  70130

Re:     *In re: Deepwater Horizon*, No. 13-30095

Dear Mr. Cayce:

BP Exploration & Production Inc., BP America Production Company, and BP p.l.c. (collectively, "BP") submit this letter brief in response to this Court's order directing the parties to address the October 2, 2013, decision in *In re: Deepwater Horizon*, 13-30315 (5th Cir.) ("BEL Decision") and "the implications of that panel's decision for this case." Doc. 00512396640.  The BEL Decision reversed the district court's Variable-Profit Decision construing the settlement agreement's Business Economic Loss ("BEL") framework, and remanded for the district court to address the proper interpretation of the BEL framework.  The BEL panel majority's reasoning in reaching this result raises two significant issues relevant to the class-certification and settlement-approval issues pending in the present appeal.

First, the BEL panel majority expressed the view that Federal Rule of Civil Procedure 23, the Rules Enabling Act, and Article III's standing requirement would preclude certification of a settlement class that includes members that have suffered no injury.  This reaffirmation of well-settled principles in this Circuit supports BP's argument that the settlement agreement and settlement class cannot survive scrutiny unless the Variable-Profit Decision is conclusively rejected at the conclusion of the remand proceedings now being conducted.

Second, the BEL panel majority raised a separate—albeit related—class-certification problem under Rule 23, the Rules Enabling Act, and Article III: the Claims Administrator's interpretation of the BEL causation framework results in awards to (and treats as class members) substantial numbers of claimants who suffered no harm *caused* by the *Deepwater Horizon* incident.  As explained by the Allpar objectors in their opening brief in the present appeal, the Claims Administrator's interpretation of the settlement agreement's

GIBSON DUNN

Mr. Lyle W. Cayce, Clerk
October 11, 2013
Page 2

causation requirements (his "Causation Policy"), unless overturned, would preclude class certification for the same reasons that the Variable-Profit Decision, unless overturned, would have that effect.

## I.    The BEL Decision

In the BEL Decision, a panel of this Court vacated the Variable-Profit Decision, which had misinterpreted the settlement agreement in a manner that produces inflated awards and results in the payment of substantial sums to claimants that suffered no injury. The BEL panel majority held that the Variable-Profit Decision "is completely disconnected from any reasonable understanding of calculation of damages" (slip op. 23) and yields awards that could "not . . . fairly be said to represent actual economic losses or lost 'variable profits'" (*id.* at 17). As the panel explained, "[i]t is difficult to understand why some claimants would be compensated for lost 'variable profits,' while others would be compensated for negative cash flows, based solely on how claimants maintained their financial records." *Id.*

On the other hand, the panel concluded that BP's interpretation of the BEL framework—which requires each claimant to demonstrate actual lost profits in accordance with economic reality by matching its revenues to its expenses—"seems amply supported by the language of [the settlement agreement] and much more consistent with general accounting and economic norms." Slip op. at 18. The panel added that "only matching [revenues to expenses] provides a realistic chance of achieving the ostensible goal of the settlement of compensating claimants for real losses." *Id.* at 21. The panel did not, however, explicitly direct the district court to adopt BP's interpretation in full, and instead remanded "for further consideration," while "retaining jurisdiction" to review the district court's conclusions on remand. *Id.* at 36.

In addition to resting their decision squarely on the text of the parties' settlement agreement, the two judges comprising the BEL panel majority also discussed principles of class action law and standing. Those principles are relevant to the interpretive questions presented in the BEL appeal (*see, e.g.*, slip op. 33 (opinion of Clement, J.); *id.* at 37, 39-40 (Southwick, J., concurring)), but the BEL panel majority's discussion of those issues also has significant implications for the present appeal.[1]

Part II of Judge Clement's opinion included a thorough discussion of Article III standing requirements, the Rules Enabling Act's prohibition against the creation of substantive rights through the class action device, and Rule 23's predominance prerequisite

---

[1]    Judge Dennis, the third member of the panel, dissented in relevant part from the BEL Decision.

**GIBSON DUNN**

Mr. Lyle W. Cayce, Clerk
October 11, 2013
Page 3

to class certification. Judge Clement identified two classes of claimants whose inclusion in the settlement class would violate Article III, the Rules Enabling Act, and Rule 23: (1) "claimants who . . . have suffered no loss at all" (slip op. 25)—that is, claimants that recover only by virtue of the erroneous Variable-Profit Decision; and (2) "claimants who . . . have suffered losses that were not caused by the oil spill" (*id.*)—that is, claimants that recover only by virtue of the Causation Policy, discussed below (*see infra* pp. 6-8). Judge Clement explained that claimants in these two categories cannot be part of a properly certified class because they have no "colorable" claims against BP, and "non-colorable claims do not constitute Article III cases or controversies and are not founded on any substantive right." Slip op. 26. And because "'[Rule 23's predominance] inquiry trains on the legal or factual questions that qualify each class member's case as a *genuine controversy*,'" the inclusion of such claimants in a class "may call into question whether the settlement class satisfies the predominance test." *Id.* at 27 n.8 (alteration and emphasis in original) (quoting *Amchem Prods., Inc.* v. *Windsor*, 521 U.S. 591, 623 (1997)). Judge Clement thus concluded that "[the] district court [would have] no authority to approve the settlement of a class that included members that had not sustained losses at all, *or* had sustained losses unrelated to the oil spill." *Id.* at 31 (emphasis added).

Judge Southwick wrote separately, and concluded that Judge Clement's analysis of the issues addressed in Part II of her opinion was "logical." Slip op. 37. Judge Southwick did not formally join Part II, because there had been "no briefing on the constitutional issues that are addressed." *Id.* Instead, Judge Southwick preferred to "defer the issue and allow the parties on remand to give it the attention it deserves." *Id.*; *see also id*. at 39-40 (referring to "remand[] for such consideration as the parties and the district court bring to the issue of causation as they address the measurement of loss"). He observed, however, that there would be "significant Rule 23 problems in the incoherence of the calculation method" if "the methods of computing losses do not, at least for a large number of claimants, determine in any reasonable fashion whether a financial loss actually occurred." *Id.* at 39. "[T]o allow the means of showing loss to become disconnected from economic realities," he explained, "threatens to distort entry into the class and is *a defect under Rule 23*." *Id.* (emphasis added).

Both Judge Southwick and Judge Clement thus recognized the serious problems posed by a settlement class that has been interpreted to include members who suffered no injury or whose injuries were not caused by the defendant's alleged conduct. Accordingly, the BEL panel majority directed the district court to enter a stay that is "tailored so that those who experienced [1] *actual injury* [2] *traceable to loss* from the Deepwater Horizon accident continue to receive recovery but those who did not do not receive their payments." Slip op. 35 (emphases added); *see id.* at 37 (Southwick, J., concurring).

GIBSON DUNN

Mr. Lyle W. Cayce, Clerk
October 11, 2013
Page 4

II.     **The BEL Decision's Impact On The Present Appeal**

   A.     **The BEL Decision Directly Supports BP's Argument That The Settlement Class Cannot Be Certified And The Settlement Agreement Cannot Be Approved Absent Final Rejection Of The Interpretation Reflected In The Variable-Profit Decision**

The BEL panel's remand means that the district court will now consider whether to replace the Variable-Profit Decision with a corrected interpretation of the settlement agreement that precludes awards to claimants that did not suffer any actual injury. For the reasons set forth in BP's principal brief in this appeal (filed August 30, 2013), the settlement agreement and settlement class would be invalid under Rule 23 and Article III if the Variable-Profit Decision were reinstated in any significant part, because that Decision results in substantial awards to large numbers of claimants who suffered no injury. BP Br. 34-60 (Doc. 00512358457); *accord* Cobb Br. 14 (Doc. 00512305749); Cobb Reply Br. 6-10 (Doc. 00512375879); Allpar Br. 4 (Doc. 00512306871); Allpar Reply Br. 4-5 (Doc. 00512381453); Sturdivant Reply Br. 7-8 (Doc. 00512381409).[2] As BP's brief explains, the Variable-Profit Decision improperly transformed a settlement intended to award damages to parties that suffered actual injuries, as determined in accordance with economic reality, into an arbitrary system that awards hundreds of millions of dollars to claimants that have suffered no injury whatsoever. BP Br. 13-21. BP showed that the Variable-Profit Decision, unless overturned, would render the class representatives inadequate, destroy commonality, predominance, and superiority, make the agreement unreasonable, and raise substantial questions relating to Article III standing. *Id.* at 34-60.

In particular, the Variable-Profit Decision, if permitted to stand, would mean that the settlement class violates Rule 23(b)(3)'s predominance requirement, under this Court's decisions in *Bell Atlantic Corp.* v. *AT&T Corp.*, 339 F.3d 294 (5th Cir. 2003), and *Steering Committee* v. *Exxon Mobil Corp.*, 461 F.3d 598 (5th Cir. 2006), and the Supreme Court's recent decision in *Comcast Corp.* v. *Behrend*, 133 S. Ct. 1426 (2013). BP Br. 43-49. That is because the Variable-Profit Decision makes "clearly inadequate" the settlement agreement's "formula by which the parties propose to calculate individual damages" (*Bell Atl.*, 339 F.3d at 307), by awarding substantial damages to undeserving claimants based solely on how they

---

[2]   The BEL Decision did uphold the Variable-Profit Decision's interpretation of the term "comparable" as used in the settlement agreement. Slip op. 24-25. Standing alone, that ruling does not prevent the district court and BEL panel from adopting an interpretation of the overall agreement that limits awards to amounts derived from calculations of actual lost profits, in accordance with economic reality and a reasonable understanding of damages assessment.

GIBSON DUNN

Mr. Lyle W. Cayce, Clerk
October 11, 2013
Page 5

kept their books, and by destroying the connection between the class members' theory of liability and the agreement's measure of damages (*Comcast*, 133 S. Ct. at 1433). BP Br. 46-49. BP also explained that the settlement class, as improperly expanded by the Variable-Profit Decision, cannot be certified because Rule 23 must be applied in a manner consistent with the Article III standing requirement, under principles of constitutional avoidance. *Id.* at 56-58. If that Decision were permitted to stand, the class would include vast numbers of members who suffered no Article III injury, contradicting the mandate that Rule 23 "must be interpreted in keeping with Article III constraints." *Amchem*, 521 U.S. at 613.

Class Counsel filed its brief in this case on September 3 and offered only a cursory response to objectors' and BP's arguments based on the Variable-Profit Decision. Class Counsel Br. 73-75 (Doc. 00512361333). Class Counsel focused mainly on the non sequitur that objectors who raised the argument were fully compensated for their own harms because the settlement is uncapped. *Id.* at 73-74. Class Counsel did not meaningfully address *Bell Atlantic*, *Steering Committee*, or *Comcast*, nor did it discuss the substantial Rule 23 or constitutional problems that the district court created by certifying a class that—as a result of the district court's own erroneous interpretation—includes many claimants that have suffered no cognizable injury. Class Counsel's argument is simply non-responsive to the reality, recognized by the BEL panel majority, that the Variable-Profit Decision, unless conclusively rejected, precludes class certification under Rule 23, the Rules Enabling Act, and Article III.

The BEL Decision provides direct support for the arguments advanced by BP and the objectors regarding the impact of the Variable-Profit Decision. As Judge Clement explained—in a discussion that Judge Southwick recognized as "logical"—a valid class cannot be certified if it includes "claimants who . . . have suffered no loss at all." Slip op. 25. Judge Southwick explicitly agreed that this feature of the Variable-Profit Decision would preclude class certification: "to allow the means of showing loss to become disconnected from economic realities . . . is a defect under Rule 23." *Id.* at 39. Judge Clement further explained that this conclusion follows from both the Article III standing requirement (*id.* at 25) and Rule 23(b)(3)'s predominance prerequisite (*id.* at 27 n.8), which prohibit the district court from certifying a class that includes parties that have "suffered no injury" and "can[not] colorably assert a loss" (*id.* at 25). As Judge Clement pointed out, this same result obtains under the Rules Enabling Act, which provides that Rule 23 shall not be construed to "abridge, enlarge or modify any substantive right" (28 U.S.C. § 2072(b)); parties who have suffered no harms have no "substantive right" to any recovery. Slip. op. 26. "[By a]llowing recovery from the settlement fund by those who have no case and cannot state a claim, the court acts *ultra vires*." *Id.* at 28. This rule applies regardless of whether the defendant is seeking to "bargain for global peace by agreeing to allow claimants with no colorable legal claim to recover from the settlement fund." *Id.* at 30.

GIBSON DUNN

Mr. Lyle W. Cayce, Clerk
October 11, 2013
Page 6

The principles articulated by the BEL panel majority apply with full force here. As Judge Clement explained, "the district court had no authority to approve the settlement of a class that included members that had not sustained losses at all." Slip op. 31; *see also id.* at 39 (Southwick, J., concurring). The objectors and BP explained in their briefs in the present case that this is exactly what the Variable-Profit Decision does, and Class Counsel offered no meaningful response. Accordingly, it is now clear beyond doubt that the district court's certification of the class and approval of the settlement agreement would have to be vacated if the remand proceedings ordered pursuant to the BEL Decision do not lead to final rejection of the Variable-Profit Decision. In order to salvage the class and the settlement agreement, the remand proceedings will have to result in an interpretation of the BEL framework that ensures that awards are calculated on the basis of actual lost profits and economic reality, preventing inflated awards and precluding payments to claimants that suffered no injury.

**B.    The BEL Decision Also Provides Support For The Allpar Objectors' Argument That The Settlement Class Cannot Be Certified And The Settlement Agreement Cannot Be Approved Unless The Causation Policy Is Overturned**

The settlement agreement defines the category of injuries qualifying claimants for BEL class membership as "Loss of income, earnings or profits suffered . . . *as a result of* the" incident. Agreement § 1.3.1.2 (R.6268) (emphasis added); *see also id.* § 38.57 (R.6361-62) (defining "Economic Damage" as "loss of profits, income and/or earnings arising in the Gulf Coast Areas or Specified Gulf Waters allegedly arising out of, due to, resulting from, or *relating in any way to, directly or indirectly, the Deepwater Horizon Incident*" (emphasis added)). The district court recognized this causation requirement in its final approval order, stating that "all class members . . . allege economic and/or property damage stemming directly from the *Deepwater Horizon* spill." R.19872. Notwithstanding this requirement, on October 10, 2012, the Claims Administrator issued a policy decision explaining that he will "compensate eligible [BEL] claimants for all losses payable under the terms of the Economic Loss frameworks in the Settlement Agreement, *without regard to whether such losses resulted or may have resulted from a cause other than the Deepwater Horizon oil spill*." R.22171-72 (emphasis added). The district court subsequently adopted this interpretation of the agreement in an email on December 12, 2012 (R.22185), and then again in an order issued *sua sponte* on April 9, 2013 (R.1010-11).

Thus, under this Causation Policy, a BEL claimant can gain class membership by satisfying certain formulas in the settlement agreement, even where the information submitted in support of the claim demonstrates that the claimant's loss is solely the result of factors unrelated to the *Deepwater Horizon* incident. As Class Counsel admits, under the Causation Policy, "once a business establishes causation under [the formulas provided in]

**GIBSON DUNN**

Mr. Lyle W. Cayce, Clerk
October 11, 2013
Page 7

Exhibit 4B, that business is entitled to all compensation calculated in accordance with [the Variable-Profit formula], *without any inquiry into the question whether some or all of the losses may have been caused by something other than the spill*." No. 13-30315, Doc. 00512253711, at 13 (emphasis added). The Claims Administrator likewise concedes that, under the Causation Policy, it has "encountered situations in which the Settlement Agreement's formulae provided recovery to claimants for losses that *a reasonable observer might conclude were not in any way related to the Oil Spill*." No. 13-30315, Doc. 00512252933, at 16 (emphasis added). Attorneys have placed advertisements to highlight the windfall available to businesses that suffered no injury as a result of the *Deepwater Horizon* incident. As one advertisement claims: "[t]here is no requirement to show a direct correlation between the April 20, 2010 BP Deepwater Horizon Oil Spill and your financial performance." R.21866. And according to another: "*You may even have reason to believe that BP did not cause your reduced revenues. Those things don't matter.* If your business meets the revenue tests, you are entitled to file a BP claim and collect money from the BP settlement." R.21860 (emphasis in original). One attorney's solicitation letter touted, "The craziest thing about the settlement is that you can be compensated for losses that are UNRELATED to the spill." Paul M. Barrett, *How BP Got Screwed on Gulf Oil Spill Claims*, Bloomberg Businessweek (June 27, 2013), http://www.businessweek.com/articles/2013-06-27/how-bp-got-screwed-on-gulf-oil-spill-claims.

In their opening brief in the present appeal, the Allpar Objectors argued that the Causation Policy presents an "insurmountable problem" to the certification of the class because that Decision "creates two classes of beneficiaries, some of whom that were directly and proximately economically damaged by the oil spill and some of whom that were economically damaged in 2010 for any one of a myriad of reasons that are completely and totally unrelated to the oil spill." Allpar Br. 4. Class members "without economic or financial losses from the oil spill . . . cannot be . . . connected to the named plaintiffs by commonality, typicality or predominance and as a result, the settlement agreement [fails to meet] the requirements of Rule 23." *Id.* at 9 (capitalization altered). While BP's brief did not focus on this issue, BP did observe that "[a] holding by this Court that the class is certifiable notwithstanding such Article III causation problems would create serious constitutional concerns for Rule 23." BP Br. 58; *see also id.* at 58 n.4; *see generally Strong v. BellSouth Telecomms. Inc.*, 137 F.3d 844, 849 (5th Cir. 1998) (explaining courts' independent duty "to protect absent class members and to police class action proceedings" under Rule 23).

The BEL Decision demonstrates that the Allpar Objectors were correct that the Causation Policy would have to be overturned before class certification could be upheld. As Judge Clement explained, "claimants who . . . have suffered losses that were not caused by the oil spill" have no "colorable" claim against BP and thus would have no "Article III

GIBSON DUNN

Mr. Lyle W. Cayce, Clerk
October 11, 2013
Page 8

case[] or controvers[y]" in any lawsuit against BP. Slip op. 26. Accordingly, "the district court [would have] no authority to approve the settlement of a class that included members that . . . had sustained losses unrelated to the oil spill." *Id.* at 31.

Judge Clement made clear that, for purposes of class certification under Rule 23, the Rules Enabling Act, and constitutional standing, there is no relevant difference between a claimant that suffered no injury at all and one that suffered no injury caused by the *Deepwater Horizon* incident. Slip op. 26, 31. Neither set of claimants has a "colorable" claim against BP, and thus neither can be part of the class consistent with Rule 23, the Rules Enabling Act, and constitutional standing requirements. *Id.* at 25-26. For this reason, BP's certification arguments relating to the Variable-Profit Decision, which improperly permits settlement awards to businesses with no injury, apply equally to the Causation Policy, which improperly permits awards to businesses with losses having no connection to the *Deepwater Horizon* incident. Unless the Causation Policy is overturned, *Comcast* would bar class certification because the agreement awards payments to claimants whose injuries were not caused by the spill and thus results in damage awards that are not connected to the relevant theory of tort liability (which requires proof of actual causation). *See Comcast*, 133 S. Ct. at 1433 ("a model purporting to serve as evidence of damages in this class action must measure only those damages attributable" to plaintiffs' theory of liability); *Exxon Co., U.S.A. v. Sofec, Inc.*, 517 U.S. 830, 832 (1996) (proximate causation is an element of admiralty tort actions). Similarly, the Causation Policy creates an irreconcilable conflict between claimants with injuries caused by the incident, on one hand, and undeserving claimants that lost money for some other reason entirely, on the other.

Equally important, the class was specifically defined to include only those who have suffered damages *caused* by the *Deepwater Horizon* incident, and BEL claimants are entitled to recover only for economic losses *caused* by the incident. *See* Agreement § 1.3.1.2 (R.6268) (defining the category of injuries qualifying BEL claimants for class membership as "Loss of income, earnings or profits *suffered . . . as a result of* the" incident) (emphasis added); *id.* § 38.57 (R.6361-62) (defining "Economic Damage" as "loss of profits, income and/or earnings arising in the Gulf Coast Areas or Specified Gulf Waters allegedly *arising out of, due to, resulting from, or relating in any way to*, directly or indirectly, the Deepwater Horizon Incident") (emphasis added). Neither the district court nor the Claims Administrator had the authority to modify the terms of the settlement agreement and class definition, let alone to do so in a manner that would violate Rule 23, the Rules Enabling Act, and Article III.

Accordingly, unless the remand proceedings now pending before the district court result in the rejection of the Causation Policy and the imposition of a causation requirement

GIBSON DUNN

Mr. Lyle W. Cayce, Clerk
October 11, 2013
Page 9

that excludes from the class all claimants that have no colorable claim of causation, the settlement agreement and class certification would be unable to survive scrutiny.

\* \* \*

If the remand proceedings ordered by the BEL panel ultimately lead to the adoption of the interpretations of the BEL framework that BP urges—as to both the Variable-Profit Decision and the Causation Policy—the otherwise fatal obstacles to class certification and settlement approval identified by BP and the objectors would be eliminated. This Court would then be left to adjudicate the objectors' remaining class-certification and fairness arguments. As BP explained in its brief in this case, the objectors' other challenges to the fairness, reasonableness, and adequacy of the settlement agreement as written—namely, that the agreement unfairly treats Texas class members, that it is not as generous as compared to the Gulf Coast Claims Facility, and that it includes an impermissible *cy pres* fund—are meritless. BP Br. 27-34. The BEL Decision does nothing to salvage those challenges.

If, on the other hand, the Variable-Profit Decision or the Causation Policy were to survive in whole or in substantial part, the district court's order certifying the settlement class and approving the settlement agreement would have to be set aside. As presently misinterpreted by the district court, the settlement agreement would not withstand scrutiny under Rule 23, the Rules Enabling Act, and Article III.

**GIBSON DUNN**

Mr. Lyle W. Cayce, Clerk
October 11, 2013
Page 10

Respectfully submitted,

 /s/ Theodore B. Olson
Theodore B. Olson
  *Counsel of Record*
Miguel A. Estrada
Thomas G. Hungar
Scott P. Martin
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036
(202) 955-8500

Richard C. Godfrey, P.C.
J. Andrew Langan, P.C.
Wendy L. Bloom
Andrew B. Bloomer, P.C.
R. Chris Heck
KIRKLAND & ELLIS LLP
300 North LaSalle Street
Chicago, IL 60654
(312) 862-2000

Jeffrey Bossert Clark
Steven A. Myers
KIRKLAND & ELLIS LLP
655 Fifteenth Street, N.W.
Washington, D.C. 20005
(202) 879-5000

George H. Brown
GIBSON, DUNN & CRUTCHER LLP
1881 Page Mill Road
Palo Alto, CA 94304
(650) 849-5300

Daniel A. Cantor
Andrew T. Karron
ARNOLD & PORTER LLP
555 Twelfth Street, N.W.
Washington, D.C. 20004
(202) 942-5000

S. Gene Fendler
Don K. Haycraft
R. Keith Jarrett
LISKOW & LEWIS
701 Poydras Street, Suite 5000
New Orleans, LA 70139
(504) 581-7979

Jeffrey Lennard
DENTONS LLP
233 South Wacker Drive
Suite 7800
Chicago, IL 60606
(312) 876-8000

*Counsel for Defendants-Appellees*