# United States Court of Appeals
# for the Fifth Circuit

IN RE: OIL SPILL BY THE OIL RIG "DEEPWATER HORIZON" IN THE GULF OF MEXICO, ON APRIL 20, 2010
**Case No. 12-31155 c/w No. 13-30095**

LAKE EUGENIE LAND & DEVELOPMENT, INCORPORATED; BON SECOUR FISHERIES, INCORPORATED; FORT MORGAN REALTY, INCORPORATED; LFBP 1, L.L.C.; ZEKES CHARTER FLEET, L.L.C.; WILLIAM SELLERS; KATHLEEN IRWIN; RONALD LUNDY; CORLISS GALLO; JOHN TESVICH; MICHAEL GUIDRY, on behalf of themselves and all others similarly situated; HENRY HUTTO; BRAD FRILOUX; JERRY J. KEE,

Plaintiffs – Appellants

v.

B.P. EXPLORATION & PRODUCTION, INCORPORATED; BP AMERICA PRODUCTION COMPANY; BP PIPE LINE COMPANY,

Defendants – Appellees

v.

GULF ORGANIZED FISHERIES IN SOLIDARITY & HOPE, INCORPORATED,

Movants- Appellant

# PLAINTIFFS-APPELLANTS' SECOND MOTION TO SUPPLEMENT THE RECORD WITH NEW DEVELOPMENTS

Brent W. Coon
Federal Bar No. 9308
Texas Bar No. 04769750
215 Orleans
Beaumont, Texas 77701
Tel.: (409) 835-2666
Fax: (409) 835-1912

*Attorney for Plaintiffs-Appellants*

## MOTION

Plaintiffs-Appellants, through and with their counsel Brent Coon & Associates (hereinafter referred to as "Coon Appellants"), hereby bring this Second Motion to Supplement the Record with New Developments before this Honorable Court under Rule 10(e) of the Federal Rules of Appellate Procedure, under Federal Rule of Evidence 201 as related to judicial notice, and the interest of justice under the court's inherent equitable powers. Class Counsel and Counsel for the BP Defendants have been consulted about this motion. Counsel for the BP Defendants have reserved the right to respond to this motion and will determine their final position upon review. In the meantime they have opposed the motion. Class Counsel has been consulted about this motion but has yet to provide a response. In support of their motion the Coon Appellants state as follows:

## MEMORANDUM IN SUPPORT

I. *New developments relate directly to the central issues raised on appeal.*

On May 2, 2012 the district court approved the proposed Deepwater Horizon Economic and Property Damages Settlement Agreement

(hereinafter referred to as the "Settlement Agreement"). The Coon Appellants timely objected to the proposed Settlement Agreement. (Rec. Doc. 7224.) The objections regarded several defects to the agreement and various notice requirements under Rule 23 of the Federal Rules of Civil Procedure. On October 22, 2012, the BP Defendants and the Plaintiffs Steering Committee filed Reply Memorandums in Support of Final Approval of the Economic and Property Damages Class Settlement. (Rec. Doc. 7727, 7731.)

A class action Fairness Hearing was scheduled to address the objections to the proposed Settlement Agreement on November 8, 2012. Prior to that time the law firm of Brent Coon & Associates notified the district court in good faith about up-to-date information concerning actual implementation problems associated with the BP claims process as outlined in the proposed Settlement Agreement. (Rec. No. 7863.) Specifically, the Coon Appellants provided to the district court detailed information about actual day-to-day problems encountered with management of the BP claims from the perspective of various claimants. It was the position of the Coon Appellants that such problems, as identified

in their principal brief, needed to be made known to the district court prior to final approval of the Settlement Agreement. (See R. 00512306924 at Page 60 referencing R. 7224 and R. 7863.) The Coon Appellants have maintained their position that implementation problems with the Settlement Agreement--especially those occurring before its final approval by the district court--stem from its poor design as related to commonality, superiority, predominance and notice requirements of Fed. R. Civ. P. Rule 23. (See R. 00512306924, R. 00512381425.)

Now new developments have surfaced in the district court challenging core interpretations of the Settlement Agreement. In the form of declarations, exhibits and emails, they reveal disputes among the parties concerning the eligibility of claimants associated with the settlement class, the burdens of proof on causation, and methods of accounting--which contradict Class Counsel's insistence during the Fairness Hearing that the Settlement Agreement is "claimant friendly". (R. 7892 at page 62 of 328.) Specifically, the new developments now show that the BP Defendants and Class Counsel disagree as to whether they discussed, *prior to the time the Settlement Agreement was executed,* the intended meaning of Exhibit 4C of

the agreement as related to cash-based and accrual accounting methods, which are associated with the Business Economic Loss (BEL) issue on remand from the Fifth Circuit. For example, **Table 1** identifies documents of Class Counsel which explain the belief that there was no specific discussion between the parties regarding matching of expenses to revenue in claims using a cash basis analysis. In turn, **Table 2** identifies documents of the BP Defendants which explain the belief that there was an understanding about matching of expenses to revenue in claims under the Settlement Agreement because Class Counsel (or the Plaintiffs' Steering Committee) never stated that under it Exhibit 4C it would require matching for only some but not all claims.

| <u>**TABLE 1: BEL ISSUE**</u> **(Class Counsel)** <br> **Case 2:10-md-02179 / Eastern District of Louisiana** |||| 
|---|---|---|---|
| **Docket #** | **Filed** | **Description** | **Dispute** |
| **COURT:** ||||
| 11735 | 10/25/13 | Scheduling Order Regarding BEL Remand | Court order requiring parties to show <u>whether they discussed</u>, *prior to the time the Settlement Agreement was executed,* the intended meaning of Exhibit 4C (i.e., whether or not Exhibit 4C requires that expenses and revenues be matched for all claims, or only some claims). |

| TABLE 1: BEL ISSUE (Class Counsel) *continued* Case 2:10-md-02179 / Eastern District of Louisiana ||||
|---|---|---|---|
| Docket # | Filed | Description | Dispute |
| **CLASS COUNSEL:** ||||
| 11804-1 | 11/06/13 | Declaration of Steven J. Herman | States <u>no specific discussion</u> between the parties regarding matching of expenses to revenue in claims using a cash basis analysis. (Pages 3, 6 of 8) |
| 11804-4 | 11/06/13 | Declaration of Joseph F. Rice | States <u>no specific discussion</u> between the parties regarding matching of expenses to revenue in claims using accrual accounting or a cash basis analysis. (Pages 3, 8-11, 15, 17, 19-20 of 20) |
| 11804-26 | 11/06/13 | Declaration of Rhon E. Jones | States <u>no specific discussion</u> between the parties regarding matching of expenses to revenue in claims. (Page 2 of 4) |
| 11804-27 | 11/06/13 | Declaration of Michael Allen Scott | States <u>no specific discussion</u> between the parties regarding matching of expenses to revenue in claims. (Page 2 of 3) |

| <u>TABLE 2: BEL ISSUE</u> (BP Defendants) Case 2:10-md-02179 / Eastern District of Louisiana ||||
|---|---|---|---|
| Docket # | Filed | Description | Dispute |
| **BP DEFENDANTS:** ||||
| 11818-1 | 11/07/13 | Declaration of Wendy L. Bloom | <u>Claims PSC representatives never stated in negotiations that claimants would or should be paid differing amounts based on how a claimant happened to keep its financial records</u> or record revenues and expenses or that accrual-basis and cash-basis claimants would or should be treated differently. (Page 5 of 92.) |

| TABLE 2: BEL ISSUE (BP Defendants) *continued* ||||
| Case 2:10-md-02179 / Eastern District of Louisiana ||||
| Docket # | Filed | Description | Dispute |
|---|---|---|---|
| **BP DEFENDANTS:** | | | |
| 11818-2 | 11/07/13 | Declaration of Richard C. Godfrey | Claims PSC never stated that the amount of compensation under the BEL Frameworks would depend and vary upon whether the books and records of a claimant were maintained on an accrual or cash basis. <u>Claims PSC never stated that Exhibit 4C would require the matching of revenues and expenses for only some but not all claims</u>. (Page 6 of 7.) |
| 11818-3 | 11/07/13 | Declaration of Hal Sider | Claims PSC never intended to deviate from the standard approach to calculating lost profits. <u>No party suggested calculating compensation based solely on claimants' cash receipts and expenditures</u> and he would not have understood such a methodology to be a valid measure of lost profits. (Page 4 of 33) |
| 11818-4 | 11/07/13 | Declaration of Brian L. Gaspardo | <u>Claims he understood variable expense as a clear recognition by the PSC</u> that a variable expense must be tied to the revenue generated by that expense. (Page 4 of 11.) |
| 11825-1 | 11/07/13 | Letter | <u>Addresses BP's proposals for implementing an accrual style framework</u> for measuring real economic losses when calculating Variable Profit under Exhibit 4C. |

| <div style="text-align:center">**TABLE 2: BEL ISSUE (BP Defendants)** *continued*<br>**Case 2:10-md-02179 / Eastern District of Louisiana**</div> ||||
|---|---|---|---|
| **Docket #** | **Filed** | **Description** | **Dispute** |
| **BP DEFENDANTS:** ||||
| 11825-2 | 11/07/13 | Declaration of John H. Davis | <u>Proposes framework for measuring a business's actual economic performance during the relevant time period due to the Deepwater Horizon incident.</u>) |
| 11863 | 11/18/13 | BP'S Memorandum Re BEL Remand | Addresses the BEL Remand and <u>whether the parties discussed the divergent effects of cash- and accrual basis accounting</u> records on the Exhibit 4C formula. |

In addition to the BEL matter, new developments have just surfaced in the district court that address a dispute between the BP Defendants and Class Counsel regarding how the class was defined *prior to the time the Settlement Agreement was executed*. (Doc. No. 11819-1 at page 4 of 22.) Basically, as shown in **Table 3,** the BP Defendants and Class Counsel disagree on whether the Claims Administrator has properly interpreted the meaning of the class definition under the Settlement Agreement, and whether he has authorized awards to claimants who have no causal nexis to the Oil Spill.

| TABLE 3: CAUSAL NEXUS ISSUE                                                                                                               ||||
|:-:|:-:|:-:|:-:|
| Case 2:10-md-02179 / Eastern District of Louisiana                                                                                        ||||
| Docket # | Filed | Description | Importance |
| 11819<br>11819-1<br>11819-2<br>11819-3 | 11/07/13 | Motion to Amend Scheduling Order | BP states <u>Claims Administrator has rewritten the class definition of the Settlement Agreement</u> (1) by paying claimants whose losses lack a causal connection with the Oil Spill and (2) by misreading Exhibit 4B to permit such a result, missing the import of pivotal language associated with the Exhibit: "Th[ese] Causation Requirements for Business Economic Claims do[] *not* apply to . . . Entities, Individuals or Claims *not* included with the Economic Class definition . . . ." |
| 11826<br>11826-1<br>11826-2 | 11/07/13 | Opposition to BP's Motion to Amend Scheduling Order and Motion to Amend Injunction (RE Causation) | <u>Class Counsel claims the Settlement Agreement provides an objective way for Claimants to establish a traceable injury</u> due to the Oil Spill, and that BP is now taking Section 1.3.1.2 of the Class Definition out of context by improperly arguing that a Claimant/business must satisfy a subjective requirement that a loss of income, earnings, or profits was suffered "as a result of" the Oil Spill. |

| TABLE 3: CAUSAL NEXUS ISSUE *continued* ||||
|---|---|---|---|
| Case 2:10-md-02179 / Eastern District of Louisiana ||||
| **Docket #** | **Filed** | **Description** | **Importance** |
| 11838<br>11838-1<br>11838-2<br>11838-3 | 11/12/13 | BP's Reply Memorandum in Support of Motion to Amend Scheduling Order RE BEL Remand and Preliminary Injunction Relating to BEL Claims | BP claims that in Class Counsel's Opposition to BP's Motion to Amend Scheduling Order re BEL Remand <u>new issues of interpretation of the agreement was raised</u>. BP sought to respond to Class Counsel's Opposition in its Reply. |
| 11848<br>11848-1 | 11/14/13 | Class Counsel Sur-Reply in Opposition to BP's Motion to Amend Scheduling Order and Injunction (RE Causation) | <u>Claims BP continues to attempt to distort the record with mischaracterizations of the nature and terms of the Settlement Agreement</u> and its own previous statements regarding causation. |
| 11857 | 11/15/13 | Order | The district court denied BP's Motion to Amend Scheduling Order re BEL Remand and including the causation issue. |
| 11876<br><br>11876-1 to 11876-12) | 11/20/13 | BP'S Offer of Proof Regarding Motion to Amend Scheduling Order and Motion to Amend Injunction | BP states the need to address various statements in Class Counsel's surreply regarding class membership, the Supplemental Information Program, and deviation from the class notice, as associated with the Settlement Agreement. |

**II.** *This Court has authority to supplement the record with "new" evidence.*

Rule 10(e) of the Federal Rules of Appellate Procedure allows for the correction of an appellate record either by agreement of the parties, by order of the district court, or by order of an appellate court. Fed. R. App. P. 10(e)(2). It states that any questions regarding the content of the record on appeal must be brought forth to the court of appeals. Fed. R. App. P. 10(e)(3).

Usually the correction of the record under Rule 10(e) does not permit appellate courts to add to the record materials that were not before the district court. *Kemlon Prod. and Dev. Co. v. U.S.*, 646 F.2d 223, 224 (5th Cir. 1981). However, under certain circumstances, and in the interest of justice, appellate courts have an inherent equitable power to supplement the record on appeal to include information not presented to district courts. *Gibson v. Blackburn*, 744 F.2d 403, 405 n.3 (5th Cir. 1984) ("Although a court of appeals will not ordinarily enlarge the record to include material not before the district court, it is clear that the authority to do so exists."); *Moore's Federal Practice*, § 310.10[5][f], at 310-18 (3d ed. 2000)("In

extraordinary situations, the circuit court may consider material not presented to the district court when it believes the interests of justice are at stake."); *Karaha Bodas Co. v. Perusahaan Perambangan Minyak Dan Gas Bumi Negara*, 2003 U.S. App. LEXIS 27765, at *13 (5th Cir. Mar. 5, 2003); *Schwartz v. Millon Air. Inc.*, 341 F.3d 1220, 1225 n.4 (11th Cir. 2003).[1] Even new developments not considered by district courts may be considered by appellate courts if they affect the consideration of issues before them. *In re Am. Biomaterials Corp.*, 954 F.2d 919, 922 (3d Cir. 1992); *Bryant v. Carlson*, 444 F.2d 353, 357 (9th Cir. 1971).

Parties desiring to rely on materials outside the record on appeal should bring a motion requesting an appellate court to take judicial notice of them. *Bayview Hunter Point Cmty. Advocates v. Metro Trasnp. Comm'n*, 366 F.3d 692, 702 n.5 (9th Cir. 2004). The parties must demonstrate why the record on appeal should be expanded.

Appellate courts may decide on a case-by-case basis whether an appellate record should be supplemented. *Dakota Indus., Inc. v. Dakota*

---

[1] See Swartzle, Using "Inherent Equitable Authority" to Expand the Record on Appeal, 30 A.B.A. Appellate Practice J.1 (Fall 2010).

*Sportswear, Inc.,* 988 F.2d 61, 63 (8th Cir. 1993). One such example is the Fifth Circuit's case of *Gibson v. Blackburn,* 744 F.2d 403, 405 n.3 (5th Cir. 1984), which allowed the record to be supplemented with photographic evidence used in a pretrial identification display after the district court had rendered its final judgment. Even if the requested material does not conclusively resolve an issue on appeal, courts may allow supplementation so as to make an informed decision. *Schwartz* at 1225 n.4. Thus factors appellate courts may consider for supplementation of a record on appeal include determining "(1) whether the proffered addition would establish beyond any doubt the proper resolution of the pending issue; [and] (2) whether remanding the case to the district court for consideration of the additional material would be contrary to the interests of justice and the efficient use of judicial resources". See *In re Capital Cities/ABC Inc.'s Application for Access to Sealed Transcripts,* 913 F.2d 89, 97 (3d Cir. 1990).

Other appellate courts have permitted the supplementation of a record on appeal with new developments or post-judgment facts, which demonstrate the appropriateness of doing so here. *See, Bryant* at 357 (court took judicial notice of new developments since an appeal, including filings,

motions and orders in the district court and court of appeals, relevant administrative action of the Administrator of the United States Department of Health, Education and Welfare, and a decision of the California Supreme Court in a related matter); *In re Am. Biomaterials Corp.* at 922 (judicial notice taken of after-the-fact guilty pleas in affirming the district court's finding of embezzlement). Even in *McGowan Investors, LP v. Frucher*, 392 F. App'x 39 (3d Cir. 2010)(unpublished) the court took judicial notice of a release after a related federal class action settlement agreement was approved and claims were dismissed on the merits.

In addition to new developments, appellate courts generally are willing to take judicial notice of proceedings in other courts. See David G. Knibb, Federal Court of Appeals Manual §28.20 (6th ed. 2013), citing to *Philips Medical Systems International, B.V. v. Bruetman*, 982 F.2d 211, 215 n.2 (7th Cir. 1992). ("we will make exceptions where the new evidence is of a "proceeding[] in other courts, both within and outside of the federal judicial system, if the proceedings have a direct relation to matters at issue." See also *Karaha* at *13, citing *Maher v. Hyde,* 272 F.3d 83, n.3 (1st Cir. 2001); *Najjar v. Ashcroft,* 257 F.3d 1262, 1283 (11th Cir. 2001); Philips *U.S. v.*

*Jones,* 29 F.3d 1549, 1553-54 (11th Cir. 1994) (an appellate court may take judicial notice of another court's ruling for the purpose of recognizing the 'judicial act' that the order represents or the subject matter of the litigation and related filings.)

Throughout this case, Class Counsel and the BP Defendants insisted that the process for developing and implementing the Settlement Agreement was transparent. However soon after its preliminary approval, ambiguities in the agreement quickly arose, as noted by the Coon Appellants in their principal and reply briefs. (R. 00512306924, R. 00512381425.) In fact, as shown in **Tables 1-3**, the BP Defendants and Class Counsel have filed a substantial number of documents, exhibits and emails with the district court that controvert the Settlement Agreement.[2] These documents, which include declarations of individuals directly involved with the negotiation of the class settlement process, contradict each other as

---

[2] In an effort to promote judicial economy, the Coon Appellants have incorporated into this motion only relevant and recently filed documents and attachments which directly show Settlement Agreement disputes between the Class Counsel and the BP Defendants. Many other documents, although recently filed by these parties, were not incorporated into this motion.

to the intent of the Settlement Agreement. In other words, they show a lack of communication and a fundamental disagreement between the parties on core issues that affect all members of the settlement class. These documents ultimately relate to the damage calculations within the Settlement Agreement. Some examples include:

- *A Complicated Settlement Agreement:* The Plaintiffs Steering Committee's acknowledgement that the BEL Causation Requirements "process is very complex and complicated" and that the Settlement Program would require "trained" accountants to assist in the submission and review of BEL claims. (Rec. Doc. 11818-1 at page 11 of 92.)

- *Easier Damage Calculation Methods Were Available*: When discussions occurred concerning the "amount of work that would be required for Settlement Program accountants to calculate losses accurately under the BEL Framework…[it was] suggested there may be easier ways to calculate lost profits (including by using an annual variable margin as BP had originally proposed in August 30, 2011 draft, *see* Exhibit A). We stated that we recognized that doing so would simplify calculating lost profits, but that the Parties had agreed to use the specific lost profits calculation in the Settlement Agreement Compensation Framework." (Rec. Doc. 11818-1 at pages 13-14 of 92.)

- *Continued Modifications to the Agreement:* The Parties continue to propose modifications to the Settlement Agreement, such as a new framework of separate classifications of businesses into 11 separate industry categories--something never mentioned in the Settlement negotiations. (Rec. Doc 11804-4 at page 11 of 20.)

- After the Settlement Agreement was made available to the public, CPA's and attorneys complained that many businesses did not keep

their books under the Generally Accepted Accounting Principles (GAAP) and that following GAAP under the Settlement Agreement would be unduly burdensome and expensive. (Doc. R. 11804-1 at page 5 of 8.)

From the records identified above (which are listed under **Tables 1-3)** it is now evident that despite the 400+ policy modifications to the Settlement Agreement, Class Counsel and the BP Defendants still cannot resolve fundamental causative issues affecting thousands of clients and their claims. Such issues, which should have been resolved through hearings prior to the finalization of the Settlement Agreement, are now being hotly debated in the district court and involve (a) whether client claims are being fairly compensated under the Settlement Agreement BEL framework and (b) whether the Claims Administrator has interpreted the Settlement Agreement in such a way that awards are being provided to claimants who have no causal nexis to the Oil Spill. Yet whether one side or the other prevails in this dispute is not the concern here. What is important here is that, as shown by the new developments identified in **Tables 1-3**, core elements of the Settlement Agreement are in dispute by the very parties that created them such that there now exists too many challenges and uncertainties to a settlement process that is nebulous at best. Such new

developments should be supplemented into the record either under Rule 10(e)(3) of the Federal Rules of Appellate Procedure, or in the interest of justice judicially noticed because, as shown herein, they are directly related to matters at issue in the Coon appellant briefs.

During the Fairness Hearing, it was made clear by the parties that the Settlement Agreement was 'working'. Now, just days after the completion of oral argument, the parties revealed their disagreements on how to interpret the Settlement Agreement. If Class Counsel and the BP Defendants cannot agree to the meaning of the Settlement Agreement, how can the members of the settlement class understand its benefits--which is a matter ultimately tied to the fairness of the class notice under Rule 23? As stated in the Coon Appellants' recent letter to the Court--and now as shown by the disputes herein--such problems with the Settlement Agreement have invalidated the Rule 23 due process notice requirements associated with the settlement class:

> "…as laid out in the briefs of the BCA Appellants, that *before the Settlement Agreement was finalized on December 21, 2012* the average class member *could not* make an informed decision whether or not to opt out of the class settlement, because they had *no way of knowing* what, if anything, they would receive under the Settlement Agreement. The decision shows that

substantive after-the-fact remedial changes are still being made to the Settlement Agreement that impinge upon the due process notice rights of the BCA Appellants. As such the Settlement Agreement is not well designed and does not contain proper notice requirements under Rule 23." (R. 00512405096 at page 4.)

## **CONCLUSION**

Based on the foregoing reasons, the Coon Appellants and their counsel respectfully request the Fifth Circuit Court of Appeals enter an Order allowing judicial notice under Federal Rule of Evidence 201, or supplementation under Rule 10(e) of the Federal Rules of Appellate Procedure, its inherent equitable powers, and in the interest of justice the new developments identified in **Tables 1-3** into the Record on Appeal for this case.

Respectfully submitted,

/s/ Brent W. Coon

Brent W. Coon
Federal Bar No. 9308
Texas Bar No. 04769750
215 Orleans
Beaumont, Texas 77701
Tel.: (409) 835-2666 Fax:
(409) 835-1912

*Attorney for the Plaintiffs-Appellants*

## **CERTIFICATE OF SERVICE**

1 hereby certify that the above and foregoing has been electronically filed through the Court's CM/ECF system and/or LexisNexis File & Serve, which will send a notice of electronic filing to all counsel of record on November 25, 2013.

*/s/ Brent W. Coon*_____

Brent W. Coon