No. 13-30095

_____

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

_____

IN RE: DEEPWATER HORIZON – APPEALS OF THE ECONOMIC AND PROPERTY
DAMAGE CLASS ACTION SETTLEMENT

_____

LAKE EUGENIE LAND & DEVELOPMENT, INCORPORATED; BON SECOUR FISHERIES,
INCORPORATED; FORT MORGAN REALTY, INCORPORATED; LFBP 1, L.L.C. DOING
BUSINESS AS GW FINS; PANAMA CITY BEACH DOLPHIN TOURS & MORE, L.L.C.;
ZEKES CHARTER FLEET, L.L.C.; WILLIAM SELLERS; KATHLEEN IRWIN; RONALD
LUNDY; CORLISS GALLO; JOHN TESVICH; MICHAEL GUIDRY, ON BEHALF OF
THEMSELVES AND ALL OTHERS SIMILARLY SITUATED; HENRY HUTTO;
BRAD FRILOUX; JERRY J. KEE,

*Plaintiffs–Appellees*,

*v.*

BP EXPLORATION & PRODUCTION INCORPORATED,
BP AMERICA PRODUCTION COMPANY, AND BP P.L.C.,

*Defendants–Appellees*.

_____

On Appeal from the United States District Court
for the Eastern District of Louisiana
MDL No. 2179, Civ. A. No. 12-970

_____

## PETITION FOR REHEARING EN BANC
## FOR APPELLEES BP EXPLORATION & PRODUCTION INC.,
## BP AMERICA PRODUCTION CO., AND BP P.L.C.

_____

[*counsel listed on inside cover*]

Richard C. Godfrey, P.C.
J. Andrew Langan, P.C.
Wendy L. Bloom
Andrew B. Bloomer, P.C.
R. Chris Heck
KIRKLAND & ELLIS LLP
300 North LaSalle Street
Chicago, IL 60654
(312) 862-2000

Jeffrey Bossert Clark
Steven A. Myers
KIRKLAND & ELLIS LLP
655 Fifteenth Street, N.W.
Washington, D.C. 20005
(202) 879-5000

Daniel A. Cantor
Andrew T. Karron
ARNOLD & PORTER LLP
555 Twelfth Street, N.W.
Washington, D.C. 20004
(202) 942-5000

Jeffrey Lennard
DENTONS LLP
233 South Wacker Drive
Suite 7800
Chicago, IL 60606
(312) 876-8000

Theodore B. Olson
  *Counsel of Record*
Miguel A. Estrada
Thomas G. Hungar
Scott P. Martin
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036
(202) 955-8500

George H. Brown
GIBSON, DUNN & CRUTCHER LLP
1881 Page Mill Road
Palo Alto, CA 94304
(650) 849-5339

S. Gene Fendler
Don K. Haycraft
R. Keith Jarrett
LISKOW & LEWIS
701 Poydras Street, Suite 5000
New Orleans, LA 70139
(504) 581-7979

Kevin M. Downey
F. Lane Heard III
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, D.C. 20005
(202) 434-5000

*Attorneys for BP Exploration & Production Inc.,*
*BP America Production Company, and BP p.l.c.*

# CERTIFICATE OF INTERESTED PERSONS

No. 13-30095

IN RE: DEEPWATER HORIZON – APPEALS OF THE ECONOMIC AND PROPERTY DAMAGE CLASS ACTION SETTLEMENT

———————————————

LAKE EUGENIE LAND & DEVELOPMENT, INCORPORATED; BON SECOUR FISHERIES, INCORPORATED; FORT MORGAN REALTY, INCORPORATED; LFBP 1, L.L.C. DOING BUSINESS AS GW FINS; PANAMA CITY BEACH DOLPHIN TOURS & MORE, L.L.C.; ZEKES CHARTER FLEET, L.L.C.; WILLIAM SELLERS; KATHLEEN IRWIN; RONALD LUNDY; CORLISS GALLO; JOHN TESVICH; MICHAEL GUIDRY, ON BEHALF OF THEMSELVES AND ALL OTHERS SIMILARLY SITUATED; HENRY HUTTO; BRAD FRILOUX; JERRY J. KEE,

*Plaintiffs–Appellees*,

*v.*

BP EXPLORATION & PRODUCTION INCORPORATED, BP AMERICA PRODUCTION COMPANY, AND BP P.L.C.,

*Defendants–Appellees*.

The undersigned counsel of record certifies that the following interested persons and entities described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

## A.    Plaintiffs–Appellees

This action (the "*Bon Secour*" action) is brought by fifteen class representatives: Lake Eugenie Land & Development, Inc.; Bon Secour Fisheries, Inc.; Fort Morgan Realty, Inc.; LFBP #1, LLC d/b/a GW Fins; Panama City Beach Dolphin Tours & More, LLC; Zeke's Charter Fleet, LLC; William Sellers; Kathleen Irwin;

i

Ronald Lundy; Corliss Gallo; John Tesvich; Michael Guidry; Henry Hutto; Brad Friloux; and Jerry J. Kee.

The class representatives represent the Economic and Property Damages Class that the district court certified, for settlement purposes only, on December 21, 2012. *See* Record on Appeal No. 13-30095 ("ROA.") 19971. The absent class members together comprise a "large group of persons [who] can be specified by a generic description, [such that] individual listing is not necessary." 5th Cir. R. 28.2.1.

## B.     Attorneys for Plaintiffs–Appellees

Stephen Jay Herman
Soren E. Gisleson
HERMAN HERMAN & KATZ LLP
820 O'Keefe Avenue
New Orleans, LA  70113

James Parkerson Roy
DOMENGEAUX, WRIGHT, ROY & EDWARDS
Suite 500
556 Jefferson Street
Lafayette, LA  70501

Elizabeth Joan Cabraser
LIEFF, CABRASER, HEIMANN & BERNSTEIN
29th Floor
275 Battery Street
San Francisco, CA  94111

Samuel Issacharoff
NEW YORK UNIVERSITY SCHOOL OF LAW
40 Washington Square, S., Suite 411J
New York, NY  10012

**C.     Defendants–Appellees**

BP Exploration & Production Inc.
BP America Production Company
BP p.l.c.

**D.     Attorneys for Defendants–Appellees**

Theodore B. Olson
Miguel A. Estrada
Thomas G. Hungar
Scott P. Martin
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C.  20036

George H. Brown
GIBSON, DUNN & CRUTCHER LLP
1881 Page Mill Road
Palo Alto, CA  94304

Richard C. Godfrey, P.C.
J. Andrew Langan, P.C.
Wendy L. Bloom
Andrew B. Bloomer, P.C.
R. Chris Heck
KIRKLAND & ELLIS LLP
300 North LaSalle Street
Chicago, IL  60654

Jeffrey Bossert Clark
Steven A. Myers
KIRKLAND & ELLIS LLP
655 Fifteenth Street, N.W.
Washington, D.C.  20005

S. Gene Fendler
Don K. Haycraft
R. Keith Jarrett
LISKOW & LEWIS
701 Poydras Street, Suite 5000
New Orleans, LA  70139

Daniel A. Cantor
Andrew T. Karron
ARNOLD & PORTER LLP
555 Twelfth Street, N.W.
Washington, D.C.  20004

Jeffrey Lennard
DENTONS LLP
233 South Wacker Drive
Suite 7800
Chicago, IL  60606

Kevin M. Downey
F. Lane Heard III
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, D.C. 20005
(202) 434-5000

James J. Neath
Mark Holstein
BP AMERICA INC.
501 Westlake Park Boulevard
Houston, TX  77079

## E.    Plaintiffs–Appellants

The Economic and Property Damages Class that the district court certified, for settlement purposes only, on December 21, 2012, ROA.13-30095.19971, included numerous objectors identified at ROA.13-30095.11718-900.  The absent class member objectors together comprise a "large group of persons [who] can be

specified by a generic description, [such that] individual listing is not necessary."

5th Cir. R. 28.2.1.

**F.    Attorneys for Plaintiffs–Appellants**

Joseph Darrell Palmer
LAW OFFICES OF JOSEPH DARRELL PALMER
Suite A
603 N. Highway 101
Solana Beach, CA  92075-0000

John Jacob Pentz III
LAW OFFICE OF JOHN J. PENTZ
19 Widow Rites Lane
Sudbury, MA  01776-0000
Stuart Cooper Yoes
YOES LAW FIRM, L.L.P.
Suite 235
3535 Calder Avenue
Beaumont, TX  7706-0000

Brent Wayne Coon
BRENT COON & ASSOCIATES
215 Orleans
Beaumont, TX  77701

Wesley J. Farrell
FARRELL & PATEL
1425 Brickell Avenue, Suite 58C
Miami, FL  33131

Terry Gray
FARRELL & PATEL, ATTORNEYS AT LAW
113 Almeria Avenue
Coral Gables, FL  33134

Sarah Elise Spigener
FARRELL & PATEL
Suite 1400
1515 Poydras Street
New Orleans, LA  70112

Stanley Paul Baudin
PENDLEY, BAUDIN & COFFIN, L.L.P.
24110 Eden Street
Plaquemine, LA  70764-0071

N. Albert Bacharach, Jr.
115 N.E. 6th Avenue
Gainesville, FL  32601-0000

Kevin W. Grillo
PENA & GRILLO, P.L.L.C.
1240 3rd Street
Corpus Christi, TX  78404-0000


  /s/ Theodore B. Olson
Theodore B. Olson
*Attorney of Record for BP Exploration &*
*Production Inc., BP America Production*
*Company, and BP p.l.c.*

## STATEMENT PURSUANT TO
## FEDERAL RULE OF APPELLATE PROCEDURE 35(b)

This petition seeks review of an unprecedented decision by a divided panel of this Court, which upholds the district court's certification of a class of vast numbers of claimants under Federal Rule of Civil Procedure 23 without regard to whether the class has been defined to include numerous members with no colorable claims against the defendants. The defendants—BP Exploration & Production Inc., BP America Production Company, and BP p.l.c. (collectively, "BP")—entered into a class settlement agreement to compensate businesses injured by the *Deepwater Horizon* oil spill in the Gulf of Mexico. The agreement's Claims Administrator and the district court, however, have effectively re-defined the class to include claimants that were not harmed by the spill, thereby eliminating the agreement's causal-nexus requirement for class membership. In the appeal at issue in this petition, a panel of this Court held that the class satisfies the requirements of Article III of the Constitution, the Rules Enabling Act, and Rule 23 regardless of the ultimate composition of the class. The panel reached this conclusion even though the district court has interpreted the class definition to include numerous claimants that were not even arguably harmed by BP's conduct.

This Court will grant rehearing *en banc* if: (1) the opinion "directly conflicts with prior Supreme Court [or] Fifth Circuit" precedent; or (2) the case is of "exceptional public importance." 5th Cir. R. 35 Internal Operating Proc.; *see also Okpalobi* v. *Foster*, 244 F.3d 405, 410 (5th Cir. 2001) (*en banc*). This case warrants *en banc* review on both of these independently sufficient grounds:

*First*, the panel's holding that a class can be certified without regard to whether claimants have colorable claims against the defendant—so long as the plaintiff's complaint merely *alleges* that class members have colorable claims—directly conflicts with numerous decisions of the Supreme Court and this Court, including the Supreme Court's holding in *Amchem Products, Inc.* v. *Windsor*, 521 U.S. 591 (1997), that class certification under Rule 23 "must be interpreted in keeping with Article III constraints." *Id.* at 613. It also conflicts with the Supreme Court's holding in *Lewis* v. *Casey*, 518 U.S. 343 (1996), that the elements of Article III standing "are not mere pleading requirements." *Id.* at 358. Indeed, three judges of this Court—Judge Garza in this appeal, and Judges Clement and Southwick in the separate appeal regarding the meaning of the settlement agreement—have now expressed concern that, unless the Claims Administrator's interpretation is definitively rejected, the settlement class will violate Article III.

The panel's decision also conflicts with the Supreme Court's holdings in *Wal-Mart Stores, Inc.* v. *Dukes*, 131 S. Ct. 2541 (2011), and *Comcast Corp.* v. *Behrend,* 133 S. Ct. 1426 (2013), that, in order for a class to be certified under Rule 23, class members must demonstrate—not merely plead—that they have satisfied the requirements of Rule 23. Unless the district court's misinterpretations are definitively rejected to exclude those who have no colorable claims against BP, Rule 23 cannot possibly be satisfied here because all class members will not have suffered the "same injury," *Dukes*, 131 S. Ct. at 2551, and will not have the "same interest," *Amchem*, 521 U.S. at 626.

The panel's decision is also at odds with the Supreme Court's holding in *Comcast*—and this Court's earlier decisions in *Steering Committee* v. *Exxon Mobil Corp.*, 461 F.3d 598 (5th Cir. 2006), and *Bell Atlantic Corp.* v. *AT&T Corp.*, 339 F.3d 294 (5th Cir. 2003)—that a damages class can be certified under Rule 23(b)(3)'s predominance requirement only where damages can fairly be measured on a class-wide basis using a methodology that is tied to the plaintiffs' theory of liability.  The panel rejected this binding case law, instead holding that whether damages are calculable on a class-wide basis tied to the theory of liability is rendered irrelevant if the district court bases its finding of predominance upon common issues of liability.

*Second*, this case is unquestionably of "exceptional importance."  If the panel's decision is permitted to stand, it will work a revolution in class-action law in this Circuit, permitting the certification of classes that cannot be certified anywhere else in the country.  The panel decision, moreover, will permit hundreds of millions of dollars in windfall payments to flow to entities that were not harmed by the oil spill.

# TABLE OF CONTENTS

**Page**

CERTIFICATE OF INTERESTED PERSONS ........................................................i

STATEMENT PURSUANT TO  FEDERAL RULE OF APPELLATE
PROCEDURE 35(b)................................................................................ vii

TABLE OF CONTENTS.........................................................................................x

TABLE OF AUTHORITIES ............................................................................... xii

ISSUES WARRANTING EN BANC CONSIDERATION....................................1

STATEMENT OF FACTS AND COURSE OF PROCEEDINGS..........................1

REASONS FOR GRANTING THE PETITION.....................................................6

    A.    Certification Of A Class Containing Numerous Members With
No Colorable Claims Directly Conflicts With Binding
Precedent. ............................................................................................6

        1.    The Panel's Decision Directly Conflicts With The
Supreme Court's Holding In *Amchem* That Rule 23
"Must Be Interpreted In Keeping With Article III
Constraints."...............................................................................6

        2.    The Panel's Decision Directly Conflicts With The
Supreme Court's Holdings In *Dukes* and *Comcast* That
The Class Proponent Must "Affirmatively Demonstrate,"
Not Merely Plead, That The Requirements Of Rule 23
Have Been Satisfied. ...................................................................9

        3.    The Panel's Decision Directly Conflicts With The
Supreme Court's Holding In *Comcast*—As Well As This
Court's Holdings In *Bell Atlantic* And *Exxon*—That
Class Damages Must Be Calculable On A Class-Wide
Basis. ........................................................................................12

B.     This Case Is Of "Exceptional Public Importance" Because It Involves Significant Issues Relating To Certification Of Class Settlements And Will Lead To Hundreds Of Millions Of Dollars Or More In Windfall Payments. ..........................................15

CONCLUSION ....................................................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

## <u>Cases</u>

*Amchem Prods., Inc.* v. *Windsor*,
    521 U.S. 591 (1997) ........................................................................ viii, 6, 11, 12

*Bell* v. *Ascendant Solutions, Inc.*,
    422 F.3d 307 (5th Cir. 2005) .................................................................... 9

*Bell Atl. Corp.* v. *AT&T Corp.*,
    339 F.3d 924 (5th Cir. 2003) .......................................................... ix, 12, 13, 14

*Butler* v. *Sears, Roebuck & Co.*,
    727 F.3d 796 (7th Cir. 2013) ................................................................... 14

*Comcast Corp.* v. *Behrend*,
    133 S. Ct. 1426 (2013) .......................................................... viii, 5, 9, 13

*Denney* v. *Deutsche Bank AG*,
    443 F.3d 253 (2d Cir. 2006) ..................................................................... 7

*Dewey* v. *Volkswagen Aktiengesellschaft*,
    681 F.3d 170 (3d Cir. 2012) .................................................................... 11

*Halvorson* v. *Auto-Owners Ins. Co.*,
    718 F.3d 773 (8th Cir. 2013) .................................................................... 7

*In re Deepwater Horizon*,
    732 F.3d 326 (5th Cir. 2013) .................................................................. 3, 7

*In re Rail Freight Fuel Surcharge Antitrust Litig.*,
    725 F.3d 244 (D.C. Cir. 2013) ............................................................... 14

*In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*,
    722 F.3d 838 (6th Cir. 2013) .................................................................. 14

*Kohen* v. *Pac. Inv. Mgmt. Co.*,
    571 F.3d 672 (7th Cir. 2009) .................................................................. 7, 8

*Lewis* v. *Casey*,
    518 U.S. 343 (1996) ......................................................................... viii, 8

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

*Lujan* v. *Defenders of Wildlife*,
   504 U.S. 555 (1992) ............................................................................8

*Mazza* v. *Am. Honda Motor Co.*,
   666 F.3d 581 (9th Cir. 2012)...............................................................7

*Mims* v. *Stewart Title Guar. Co.*,
   590 F.3d 298 (5th Cir. 2009)...............................................................8

*Okpalobi* v. *Foster*,
   244 F.3d 405 (5th Cir. 2001) (en banc) ....................................... vii, 6

*Steering Comm.* v. *Exxon Mobil Corp.*,
   461 F.3d 598 (5th Cir. 2006)................................................. ix, 12, 13

*Wal-Mart Stores, Inc.* v. *Dukes*,
   131 S. Ct. 2541 (2011) ..................................................... viii, 4, 9, 10

## Rule

Fed. R. Civ. P. 23 ........................................................................ *passim*

## Other Authority

5th Cir. R. 35 Internal Operating Proc........................................ vii, 6, 15

## ISSUES WARRANTING EN BANC CONSIDERATION

1.      Whether a class can be certified, consistent with Article III of the Constitution and the Rules Enabling Act, if the class is interpreted to include numerous class members that lack standing to bring suit against the defendant.

2.      Whether a class can be certified under Rule 23 based merely upon the general, conclusory allegations in the complaint, without a showing that the proposed class can actually satisfy the requirements of Rule 23.

3.      Whether a class can be certified, consistent with Rule 23's commonality, typicality, and adequacy requirements, if the class is interpreted to include numerous class members that have suffered no injuries caused by the defendant's conduct, and thus have no claims that depend on common assertions of law or fact.

4.      Whether a class can be certified, consistent with Rule 23's predominance requirement, without regard to whether damages are calculable on a class-wide basis using a methodology that is tied to the plaintiff's theory of liability.

## STATEMENT OF FACTS AND COURSE OF PROCEEDINGS

On April 20, 2010, an explosion on the drilling rig *Deepwater Horizon* caused an oil spill in the Gulf of Mexico. ROA.13-30095.19846. BP immediately initiated a massive response, including paying out almost $7 billion to those harmed by the oil spill. ROA.13.30095.7296-97. As BP was paying out claims to those harmed by the spill, plaintiffs' attorneys filed hundreds of lawsuits relating to the spill. ROA.13-30095.1057 & n.1.

In April 2012, the parties reached a proposed class settlement designed to compensate those harmed by the spill. *See* ROA.13-30095.3554. The settlement

agreement created a compensation framework for business economic loss ("BEL"), and defined BEL class membership as entities that suffered "[l]oss of income, earnings or profits . . . *as a result of* the" spill.   Agreement § 1.3.1.2 (ROA.13-30095.6268) (emphasis added).   On December 21, 2012, the district court approved the settlement and certified the class for settlement purposes.

The Claims Administrator is charged with implementing the terms of the settlement agreement, subject to court review.   Agreement § 4.3.10 (ROA.13-30095.6282).   In that capacity, he adopted—and the district court ultimately approved—two interpretations that fundamentally altered the class definition and rewrote the settlement agreement.

*First*, the Claims Administrator purported to determine whether each claimant suffered a loss during the period following the oil spill by looking at the claimants' revenue and expenses in the periods in which they were *recorded*, instead of "matching" corresponding revenues and expenses.   ROA.13-30095.21002.   The Claims Administrator thus added to the class thousands of businesses that had suffered no harm during the relevant period, leading to hundreds of millions of dollars (or more) in windfall payments.

*Second*, the Claims Administrator revealed that he was refusing to enforce the agreement's causal-nexus requirement for class membership.   Br. of Appellees *Deepwater Horizon* Court Supervised Settlement Program & Patrick A. Juneau at 16, Nos. 13-30315 & 13-30329 (5th Cir. May 24, 2013).   The Claims Administrator thus added thousands of additional businesses to the class, such as law firms with lawyers who lost their law licenses and warehouses that had burned down be-

2

fore the spill, even though these claimants' losses were unrelated to the oil spill. *See* Decl. of Allison B. Rumsey ¶¶ 4-5, Ex. Q to Emergency Mot., Nos. 13-30315 & 13-30329 (5th Cir. Nov. 21, 2013).

In BP's separate BEL Appeal (No. 13-30315), a panel of this Court vacated the district court's matching decision, voiced grave reservations about the causation issue, and remanded both issues to the district court for reconsideration. *In re Deepwater Horizon*, 732 F.3d 326 (5th Cir. 2013); *see also In re Deepwater Horizon*, No. 13-30315, order at 3 (5th Cir. Dec. 2, 2013) (per curiam). The BEL Appeal panel explained that, if the settlement were interpreted to include claimants with no colorable claims against BP, as the Claims Administrator's interpretations would require, this would imperil the certifiability of the class. Specifically, Judge Clement reasoned that Article III and Rule 23 gave the district court "no authority to approve the settlement of a class that included members that had not sustained losses at all, or had sustained losses unrelated to the oil spill." 732 F.3d at 343. Judge Southwick agreed that this portion of Judge Clement's opinion was "logical." *Id.* at 346 (Southwick, J., concurring). The meaning of the settlement agreement—including the validity of the Claims Administrator's interpretations—remains pending before the BEL Appeal panel.

While the appeal before the BEL Appeal involves the meaning of the settlement, the appeal at issue in this petition deals with the certification of the class. In this Certification Appeal, BP argued that, if the Claims Administrator's interpretations were overturned as part of the BEL Appeal, the class could be certified. In contrast, if either of these modifications to the class were upheld, BP argued that

3

the class could not be certified because the class would then include numerous members who had no colorable claims against BP.

On January 10, 2014, a divided panel of this Court affirmed class certification without awaiting the BEL Appeal panel's decision as to the meaning of the agreement.  Doc. 00512496788 ("Op.").  The panel majority first rejected the argument that the Claims Administrator's interpretations rendered the class unlawful under Article III.  Op. 8-24.  The majority concluded that the class-action complaint establishes that the class definition includes only persons and entities that suffered injuries "as a result of" the spill.  *See* Op. 15-17.  So long as "the class is defined so that every absent class member can *allege* standing," the majority reasoned, "it would be improper to look for proof of injuries beyond what the claimants identified in the class definition."  Op. 21 (quotation omitted).

The panel majority also held that the agreement satisfied Rule 23's commonality and adequacy requirements, regardless of the Claims Administrator's interpretations, holding that courts need not look beyond the pleadings "to resolve the merits of the common contention at the Rule 23 stage."  Op. 30.  On commonality, the majority stated that the Supreme Court's holding in *Wal-Mart Stores, Inc.* v. *Dukes* that class members must "have suffered the same injury" (131 S. Ct. 2541, 2551 (2011)) "need not relate specifically to the damages component of the class members' claims."  Op. 28.  Instead, the majority concluded, it is sufficient that class members have a common contention in the complaint.  *Ibid.*  The majority also held that there was no intraclass conflict, even if the settlement was interpreted to include members that were not harmed by BP.  Op. 32-36.

4

Finally, the panel majority concluded that the class satisfies Rule 23(b)(3)'s predominance requirement, holding that *Comcast Corp.* v. *Behrend,* 133 S. Ct. 1426 (2013), does not "preclud[e] certification . . . in any case where the class members' damages are not susceptible to a formula for classwide measurement." Op. 36. The panel reasoned that Rule 23(b)(3) requires that a damages measurement formula be both class-wide and compatible with the plaintiff's liability theory *only* where the predominance finding was based on common issues of damages. Op. 37. In contrast, where the district court's finding of common issues related to liability, rather than damages, the majority believed that the lack of a uniform measure of damages is immaterial. Op. 40. Because the panel majority concluded that the district court in this case based its finding of predominance on issues relating to BP's liability, it found irrelevant BP's argument that the Claims Administrator's interpretations rendered the damages formula inadequate. Op. 37.

Judge Garza dissented, explaining that the Claims Administrator has interpreted the agreement in such a way to cause the class—"*as actually implemented*"—to "encompass individuals or entities who could never truthfully allege or establish standing, at any stage of the litigation." Op. 53. This modification rendered the class invalid under Article III because the class would now include numerous members who lacked standing to bring a claim against BP. *Ibid.* Judge Garza also rejected the majority's commonality analysis, explaining that Rule 23 requires that the common questions "go to the validity of *each one of the claims.*" Op. 59. When the class is interpreted to include claimants not harmed by the oil spill, he concluded, there is no commonality under Rule 23. *Ibid.*

## REASONS FOR GRANTING THE PETITION

This Court will grant rehearing *en banc* where (1) the panel opinion "directly conflicts with prior Supreme Court [or] Fifth Circuit" precedent; or (2) the case involves issues "of exceptional public importance." 5th Cir. R. 35 Internal Operating Proc.; *see also Okpalobi* v. *Foster*, 244 F.3d 405, 410 (5th Cir. 2001) (*en banc*). *En banc* review is warranted here because the panel's decision conflicts with numerous holdings by the Supreme Court and this Court, and involves a misinterpretation of class-action law that could result in hundreds of millions of dollars or more in windfall awards for losses unrelated to the oil spill.

**A.    Certification Of A Class Containing Numerous Members With No Colorable Claims Directly Conflicts With Binding Precedent.**

The Certification Appeal panel held that the class here could be certified even if the Claims Administrator's interpretations are ultimately affirmed. Yet, as the BEL Appeal panel and Judge Garza explained, if those decisions are left in place, the settlement class would include numerous claimants that have no colorable claim against BP. The Certification Appeal panel's holding that the class can be certified even if it includes many such members conflicts with several decisions of the Supreme Court and this Court, and warrants *en banc* review.

**1.    The Panel's Decision Directly Conflicts With The Supreme Court's Holding In *Amchem* That Rule 23 "Must Be Interpreted In Keeping With Article III Constraints."**

In *Amchem Products, Inc.* v. *Windsor*, the Supreme Court held that Rule 23 "must be interpreted in keeping with Article III constraints." 521 U.S. 591, 613 (1997). Consistent with this principle, Judge Clement explained in the BEL Ap-

6

peal that "'the court must be able to find that both the class and the representatives have suffered some injury requiring court intervention.'" *In re Deepwater Horizon*, 732 F.3d 326, 342 (5th Cir. 2013) (opinion of Clement, J.) (quoting *Denney* v. *Deutsche Bank AG*, 443 F.3d 253, 264 (2d Cir. 2006)); *see also id.* at 346 (Southwick, J., concurring) (describing Judge Clement's reasoning as "logical"). Judge Garza made the same point in his dissent in the present appeal, explaining that "Article III standing irreducibly requires that the injury be 'fairly traceable to the challenged *action of the defendant*, and not the result of the independent action of some third party not before the court.'" Op. 53 (Garza, J., dissenting) (citation omitted). This conclusion accords with the approach adopted by numerous courts of appeals, which have repeatedly held that Article III precludes certification of classes that include members that would lack standing to bring suit against the defendant. *See Halvorson* v. *Auto-Owners Ins. Co.*, 718 F.3d 773, 779 (8th Cir. 2013); *Mazza* v. *Am. Honda Motor Co.*, 666 F.3d 581, 594 (9th Cir. 2012); *Kohen* v. *Pac. Inv. Mgmt. Co.*, 571 F.3d 672, 677 (7th Cir. 2009); *Denney*, 443 F.3d at 264.

Before the Certification Appeal panel, BP argued that, if the Claims Administrator's refusals to require matching and to enforce the causal-nexus requirement were permitted to stand, the settlement agreement would violate Article III because the class would be modified to include numerous claimants that have no standing to bring suit against BP. The panel majority sought to avoid answering this argument by pointing to the class complaint, which defines the class in a manner con-

sistent with Article III requirements: class membership is limited to those suffering harms "as a result of" the oil spill.  Op. 16-17.

As Judge Garza explained in his dissent, however, the relevant focus is the class definition "*as actually implemented*," Op. 53 (Garza, J., dissenting), especially where, as here, "the Settlement Agreement provides that the Claims Administrator will have authority to make policy decisions and to issue guidance" on the agreement's meaning, Op. 55-56.  Thus, while "the words 'as a result of' remain in the text of the Class Definition, the Amended Complaint, and the Settlement Agreement," they "have no significance to determining who is eligible to participate in the settlement."  Op. 53.  If the Claims Administrator's interpretation of the settlement agreement is affirmed, this will definitively change the class definition. It is to *that* definition of the class that Article III applies, particularly because standing must be satisfied at each "stag[e] of the litigation," and the elements of Article III standing "are not mere pleading requirements."  *Lujan* v. *Defenders of Wildlife*, 504 U.S. 555, 561 (1992); *accord Lewis* v. *Casey*, 518 U.S. 343, 358 (1996).

While the panel placed considerable emphasis on the Seventh Circuit's decision in *Kohen*—which was cited by this Court in *Mims* v. *Stewart Title Guaranty Co.*, 590 F.3d 298 (5th Cir. 2009)—*Kohen* held that "a class should not be certified if it is apparent that it contains a great many persons who have suffered no injury at the hands of the defendant."  571 F.3d at 677.  If the Claims Administrator's misinterpretations are permitted to stand, "a great many" class members would have suf-

fered no injury at BP's "hands" (*see* Op. 57 (Garza, J., dissenting)), and thus the panel's decision is contrary not only to *Amchem*, but to *Mims* as well.

> **2.  The Panel's Decision Directly Conflicts With The Supreme Court's Holdings In *Dukes* and *Comcast* That The Class Proponent Must "Affirmatively Demonstrate," Not Merely Plead, That The Requirements Of Rule 23 Have Been Satisfied.**

In *Dukes* and *Comcast*, the Supreme Court held that, in order to satisfy Rule 23, the proponent of class certification must "affirmatively demonstrate" that the requirements of Rule 23 are satisfied.  *Wal-Mart Stores, Inc.* v. *Dukes*, 131 S. Ct. 2541, 2551 (2011); *see also Comcast Corp.* v. *Behrend*, 133 S. Ct. 1426, 1432 (2013) (Rule 23 must be satisfied through "through evidentiary proof").  This Court's case law is in accord.  *See Bell* v. *Ascendant Solutions, Inc.*, 422 F.3d 307, 311-12 (5th Cir. 2005) (finding "no support for the view that a district court must accept, on nothing more than pleadings, allegations of elements central to the propriety of class certification under rule 23").  The panel decision here directly conflicts with these controlling cases.  The majority conducted its Rule 23 analysis by looking only at the complaint.  Op. 30; *see also id.* at 16-17.  Just as in its Article III analysis, the panel disregarded BP's and the objectors' arguments that the Claims Administrator's interpretation would render the settlement class invalid under Rule 23 because the majority believed that the definition of the class in the complaint should be the operative focus, regardless of the definition actually being applied by the Claims Administrator in implementing the agreement.  Op. 30.

Had the panel not committed this clear error of law, it would have reached a different conclusion.  An analysis of the Rule 23 factors consistent with the Su-

preme Court's decisions in *Dukes* and *Comcast*—looking behind the pleadings to see the actual composition of the class as implemented—would lead to the conclusion that, unless the Claims Administrator's erroneous refusals to require matching and to enforce the causal-nexus requirement for class membership are both definitively rejected, then the class would violate Rule 23 in multiple respects.

*First*, as re-defined by the Claims Administrator, the class would not satisfy the commonality requirement under *Dukes* because class members would not have suffered the "same injury." 131 S. Ct. at 2551. Under the Claims Administrator's misinterpretations, which rewrite the settlement agreement, the class will be sundered into two distinct groups lacking commonality between them. On one hand, legitimate class claimants will have suffered the "injury" of being harmed by the oil spill. On the other hand, interlopers will have suffered no injury at all—or at least no injury caused by BP. These two groups will not have suffered the "same injury"—indeed, one group will have suffered *no* relevant injury at all—meaning that this class would lack commonality. The panel insisted that there would be common questions regarding BP's liability across the class, Op. 29-30, but, as Judge Garza explained, those questions are *irrelevant* to the thousands of individuals added to the class by the Claims Administrator, who have no legal quarrel with BP's conduct, *see* Op. 59 (Garza, J., dissenting).[1]

---

[1] For the same reasons, the panel decision is inconsistent with Rule 23's typicality requirement. *See* Op. 59 (Garza, J., dissenting); *see also Dukes*, 131 S. Ct. at 2551 n.5 ("commonality and typicality . . . tend to merge" (citation omitted)).

*Second*, as interpreted by the Claims Administrator, the class here would not satisfy the adequacy requirement under *Amchem* because "[a] class representative must be part of the class and *possess the same interest* and *suffer the same injury* as the class members." 521 U.S. at 625-26 (emphases added) (quotation omitted). This "*structural* protectio[n]" is particularly important in the settlement class context, where the class representative is negotiating the rights of absent class members. *Dewey* v. *Volkswagen Aktiengesellschaft*, 681 F.3d 170, 189 n.19 (3d Cir. 2012). Class members that have suffered no harms caused by BP's conduct cannot possibly have the "same interest" as those genuinely harmed by the oil spill.

*Third*, as revised by the Claims Administrator, the class here would not satisfy Rule 23's predominance requirement. As explained in more detail below, in a case where an individualized assessment of damages would overwhelm any purportedly common issues in the case, the predominance factor requires a class-wide method for calculating damages that measures only those damages attributable to the plaintiffs' theory of liability. *See infra* Part A.3. If the class is finally interpreted to include numerous individuals with no colorable claims against BP, the class would not satisfy this requirement.

These are far from academic issues: Entities without any injuries or having no injuries caused by the oil spill have widely divergent interests from legitimate class members with colorable claims of spill-related harm. Legitimate claimants would want to maximize compensation for their actual injuries. In this case, they could have done so by bargaining for greater Risk Transfer Premiums ("RTPs"), which are contractually negotiated multipliers that magnify awards for actual dam-

ages.  ROA.13-30095.19853.  In contrast, claimants that have suffered no relevant harms have no use for RTP multipliers unless they can first get their fictitious claims for damages paid; accordingly, these claimants would be willing to sacrifice greater RTP multipliers in exchange for a settlement that ignores the requirements of injury and causation and thus increases the likelihood of a windfall recovery.

Rule 23 is designed to aggregate the claims of a "cohesive" group of those injured in the same way by the defendant's conduct, *Amchem Prods.*, 521 U.S. at 623, in the process avoiding intraclass conflicts that risk jeopardizing the rights of absent class members, *see, e.g., id.* at 620 (noting that Rule 23's requirements "designed to protect absentees by blocking unwarranted or overbroad class definitions . . . demand undiluted, even heightened, attention in the settlement context").  Because the panel majority's approach to Rule 23 fundamentally undermines that goal, and indeed exacerbates the very problems that Rule 23 is designed to guard against, rehearing *en banc* is warranted.

### 3.    The Panel's Decision Directly Conflicts With The Supreme Court's Holding In *Comcast*—As Well As This Court's Holdings In *Bell Atlantic* And *Exxon*—That Class Damages Must Be Calculable On A Class-Wide Basis.

Rule 23(b)(3) provides that a damages class may not be certified unless "the questions of law or fact common to class members predominate over any questions affecting only individual members."  Fed. R. Civ. P. 23(b)(3).  Under this Court's case-law, the predominance requirement is not satisfied "where the calculation of damages is not susceptible to a mathematical or formulaic calculation, or where the formula by which the parties propose to calculate individual damages is clearly in-

adequate." *Bell Atl. Corp.* v. *AT&T Corp.*, 339 F.3d 294, 307 (5th Cir. 2003). For example, in *Steering Committee* v. *Exxon Mobil Corp.*, 461 F.3d 598 (5th Cir. 2006), this Court affirmed the denial of class certification in a case involving a fire at a chemical plant, explaining that individual damages inquiries would defeat any showing of predominance because "the damages claims in [the] case [were] not subject to any sort of formulaic calculation." *Id.* at 602. Consistent with this Court's case-law—and rejecting contrary case-law from other courts—the Supreme Court recently held in *Comcast* that Rule 23(b)(3) requires a reliable common methodology for determining damages on a class-wide basis, which "measure[s] only those damages attributable" to plaintiffs' theory of liability, where "[q]uestions of individual damage calculations" otherwise would "overwhelm questions common to the class." 133 S. Ct. at 1433.

Before the panel in this case, BP argued that if the district court's errors on matching and causation were left in place, the class could not satisfy the predominance requirement because those errors would render the settlement agreement's damages formula "clearly inadequate" and would sunder the connection between the plaintiffs' theory of liability and their theory of damages. The panel ignored these arguments, instead holding that these issues are irrelevant because the district court allegedly based its "predominance" determination exclusively upon common questions relating to BP's *liability*. *See* Op. 36-43; *see, e.g.*, *id.* at 37 ("nothing in *Comcast* mandates a formula for classwide measurement of damages in all cases").

That conclusion directly contradicts the holdings of *Bell Atlantic*, *Exxon*, and *Comcast* quoted above—most obviously *Bell Atlantic*'s holding that the predomi-

nance requirement is not satisfied "where the calculation of damages is not suscep-tible to a mathematical or formulaic calculation, or where the formula by which the parties propose to calculate individual damages is clearly inadequate."  339 F.3d at 307.  A determination that certain liability issues are common is only the start, not the conclusion, of the predominance inquiry; the court must also determine wheth-er those common issues predominate over issues affecting only individual class members, including "individualized inquiries" into damages.  *Id.* at 304.  The panel failed to adhere to that requirement in this case.[2]

In any event, contrary to the panel's assertions, *see* Op. 37, 41, the district court *did* base its predominance analysis on its conclusion that "damages can be fairly calculated through various common methodologies or formulaic calculations by means of the comprehensive claims frameworks contained in the Settlement

---

[2]  The panel asserted that its holding is consistent with the interpretation of *Comcast* adopted by several other courts, which have indicated that individualized damages issues might not preclude certification if the class is certified only for liability purposes.  The district court here certified the class for *both* liability and damages, rendering these cases inapposite.  ROA.13-30095.19971-76.  In any event, to the extent that some courts have adopted a limited view of *Comcast* and the predominance inquiry in the damages-formula context, those conclusions are inconsistent with this Court's holdings in *Bell Atlantic* and *Exxon*, as well as with the D.C. Circuit's recent opinion in *In re Rail Freight Fuel Surcharge Antitrust Litigation*, 725 F.3d 244 (D.C. Cir. 2013).  Significantly, two of the decisions cited most often by the panel majority—*Butler* v. *Sears, Roebuck & Co.*, 727 F.3d 796 (7th Cir. 2013), and *In re Whirlpool Corp. Front-Loading Washer Prods. Liability Litig.*, 722 F.3d 838 (6th Cir. 2013)—are subject to pending petitions for certiorari in the Supreme Court.  *See* Nos. 13-430 & 13-431.

Agreement." ROA.13-30095.19891. As BP explained, if the Claims Administrator's errors on matching and/or causation are left in place, then damages would not be "fairly calculated" on a class-wide basis.

**B.  This Case Is Of "Exceptional Public Importance" Because It Involves Significant Issues Relating To Certification Of Class Settlements And Will Lead To Hundreds Of Millions Of Dollars Or More In Windfall Payments.**

Given the significance of the issues in this case and the financial stakes at issue, this case is unquestionably one of "exceptional public importance." 5th Cir. R. 35 Internal Operating Proc. The panel's decision threatens to work a revolution in the certification of class actions under Rule 23 by its dramatic, unprecedented expansion of the availability of such certification. Reviewing such a major change in class-action law is of "exceptional public importance." And the "importance" of this case is further reinforced by the harm resulting from the panel's error. The certification of this class may well result in hundreds of millions of dollars flowing to parties that have suffered no harm, or at least no harm caused by BP. Such an outcome would be a fundamental betrayal of the bargain that BP struck to remedy the harm caused by the oil spill: full and complete payment to those actually harmed by the spill.

## CONCLUSION

The Court should grant BP's petition for rehearing *en banc* and hold that a class can be certified only if it is composed of members that have a colorable claim against the defendant.

January 21, 2014

Respectfully submitted,

Richard C. Godfrey, P.C.
J. Andrew Langan, P.C.
Wendy L. Bloom
Andrew B. Bloomer, P.C.
R. Chris Heck
KIRKLAND & ELLIS LLP
300 North LaSalle Street
Chicago, IL 60654
(312) 862-2000

   /s/ Theodore B. Olson      
Theodore B. Olson
   *Counsel of Record*
Miguel A. Estrada
Thomas G. Hungar
Scott P. Martin
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C.  20036
(202) 955-8500

Jeffrey Bossert Clark
Steven A. Myers
KIRKLAND & ELLIS LLP
655 Fifteenth Street, N.W.
Washington, D.C. 20005
(202) 879-5000

George H. Brown
GIBSON, DUNN & CRUTCHER LLP
1881 Page Mill Road
Palo Alto, CA  94304
(650) 849-5339

Daniel A. Cantor
Andrew T. Karron
ARNOLD & PORTER LLP
555 Twelfth Street, N.W.
Washington, D.C. 20004
(202) 942-5000

S. Gene Fendler
Don K. Haycraft
R. Keith Jarrett
LISKOW & LEWIS
701 Poydras Street, Suite 5000
New Orleans, LA 70139
(504) 581-7979

Jeffrey Lennard
DENTONS LLP
233 South Wacker Drive
Suite 7800
Chicago, IL 60606
(312) 876-8000

Kevin M. Downey
F. Lane Heard III
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, D.C. 20005
(202) 434-5000

*Attorneys for BP Exploration & Production Inc.,*
*BP America Production Company, and BP p.l.c.*

**CERTIFICATE OF SERVICE**

I hereby certify that on January 21, 2014, an electronic copy of the foregoing Petition for Rehearing *En Banc* was filed with the Clerk of Court for the United States Court of Appeals for the Fifth Circuit using the appellate CM/ECF system, and that service will be accomplished by the appellate CM/ECF system.

   /s/ Theodore B. Olson
Theodore B. Olson
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C.  20036
(202) 955-8500

`

## CERTIFICATE OF ELECTRONIC COMPLIANCE

I hereby certify that on January 21, 2014, this Petition For Rehearing *En Banc* was transmitted to the Clerk of the United States Court of Appeals for the Fifth Circuit through the Court's CM/ECF document filing system, https://ecf.ca5.uscourts.gov.  I further certify that: (1) required privacy redactions have been made pursuant to this Court's Rule 25.2.13, (2) the electronic submission is an exact copy of the paper document pursuant to this Court's Rule 25.2.1, and (3) the document has been scanned with the most recent version of Microsoft Forefront Endpoint Protection and is free of viruses.


    /s/ Theodore B. Olson
Theodore B. Olson
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C.  20036
(202) 955-8500