# United States Court of Appeals
# for the Fifth Circuit

---

### No. 13-30095

IN RE: *DEEPWATER HORIZON* – APPEALS OF THE ECONOMIC AND PROPERTY DAMAGE
CLASS ACTION SETTLEMENT

---

LAKE EUGENIE LAND & DEVELOPMENT, INCORPORATED; BON
SECOUR FISHERIES, INCORPORATED; FOR MORGAN REALTY,
INCORPORATED; LFBP 1, L.L.C., DOING BUSINESS AS GW FINS;
PANAMA CITY BEACH DOLPHIN TOURS & MORE, L.L.C.; ZEKES
CHARTER FLEET, L.L.C.; WILLIAM SELLERS; KATHLEEN IRWIN;
RONALD LUNDY; CORLISS GALLO; JOHN TESVICH; MICHAEL GUIDRY,
ON BEHALF OF THEMSELVES AND ALL OTHERS SIMILARLY SITUATED;
HENRY HUTTO; BRAD FRILOUX; JERRY J. KEE,

*Plaintiffs-Appellees*

v.

BP EXPLORATION & PRODUCTION, INCORPORATED; BP AMERICA
PRODUCTION; BP PIPELINE COMPANY,

*Defendants-Appellees*

v.

GULF ORGANIZED FISHERIES IN SOLIDARITY & HOPE,
INCORPORATED,

*Movant-Appellant*

---

On Appeal from the U.S. District Court for the Eastern District of Louisiana
MDL No. 2179, Civ. A. No. 12-970

---

**PLAINTIFF-APPELLEES' RESPONSE IN OPPOSITION TO PETITION FOR
REHEARING EN BANC FILED BY APPELLEE, BP**

---

Stephen J. Herman
Herman Herman & Katz LLC
820 O'Keefe Avenue
New Orleans, LA 70113
Telephone: (504) 581-4892
Fax: (504) 569-6024
Email: sherman@hhklawfirm.com
*Co-Lead Class Counsel*

James Parkerson Roy
Domengeaux Wright Roy & Edwards LLC
556 Jefferson Street, Suite 500
Lafayette, LA 70501
Telephone: (337) 233-3033
Fax: (337) 233-2796
Email: jimr@wrightroy.com
*Co-Lead Class Counsel*

Samuel Issacharoff
40 Washington Square South, 411J
New York, NY 10012
Telephone: (212) 998-6580
Email: si13@nyu.edu
*Special Appeal Counsel*

Elizabeth Cabraser
Soren E. Gisleson
James Bilsborrow
Annika Martin
*Additional Counsel on Brief*

February 6, 2014

# TABLE OF CONTENTS

Table of Contents .    .    .    .    .    .    .    .    .    .    i

Table of Authorities    .    .    .    .    .    .    .    .    .    ii

Introduction and Summary of Argument    .    .    .    .    .    1

BP is Jurisdictionally Barred from Seeking En Banc Review    .    .    3

Factual and Procedural Background    .    .    .    .    .    .    4

    Causation is a Separate and Affirmative Requirement for Business
    Economic Loss Claims under the Settlement Agreement .    .    5

The Merits Panel Decision Properly Applies the Law of This
Circuit and the Supreme Court .    .    .    .    .    .    .    10

    All Class Claims are "Colorable"    .    .    .    .    .    10

    This Case Does Not Raise Any Conflict Regarding
    Article III Standing    .    .    .    .    .    .    .    12

    *Comcast's* Predominance Holding for Damages Calculations
    Is Satisfied .    .    .    .    .    .    .    .    .    13

Conclusion .    .    .    .    .    .    .    .    .    .    16

Certificate of Service    .    .    .    .    .    .    .    .    17

# TABLE OF AUTHORITIES

*Amchem Products, Inc. v. Windsor*, 521 U.S. 591 (1997) .    .    .    12

*Amgen, Inc. v. Connecticut Retirement Plans and Trust Funds*,
    133 S.Ct. 1184 (2013)    .    .    .    .    .    .    .    12

*Baca v. Ladd*, 77 F.3d 480 (5th Cir. 1996)    .    .    .    .    .    3

*Comcast Corp. v. Behrend*, 133 S. Ct. 1426 (2013) .    .    .    .    14-15

*Denney v. Deutsche Bank AG,* 443 F.3d 253 (2d Cir. 2006)    .    .    2, 13

*Erica P. John Fund, Inc. v. Halliburton*, 131 S.Ct. 2179 (2011) .    .    12

*Forbush v. J.C. Penney Co.,* 994 F.2d 1101 (5th Cir. 1993)    .    .    11

*In re: Deepwater Horizon,* 732 F.3d 326 (5th Cir. 2013)
    ("BEL Opinion")    .    .    .    .    .    .    .    .    6, 10

*In re: Deepwater Horizon,* 808 F.Supp.2d 943 (E.D.La. 2011)    .    .    8

*Kohen v. Pac. Inv. Mgmt. Co. LLC*, 571 F.3d 672 (7th Cir. 2009)    .    2, 13

*Mims v. Stewart Title Guar. Co.*, 590 F.3d 298 (5th Cir. 2009)    .    .    10-11

*Monsanto Co. v. Geerston Seed Farms*, 130 S.Ct. 2743 (2010)    .    .    12

*In re Nassau County Strip Search Cases*, 461 F.3d 219 (2d Cir. 2006) .    14

*In re Rodriguez,* 695 F.3d 360 (5th Cir. 2012)    .    .    .    .    11

*Sullivan v. DB Investments,* 667 F.3d 273, 348 (3d Cir. 2011) (en banc)
    (Jordan, J., dissenting)    .    .    .    .    .    .    .    11

OIL POLLUTION ACT OF 1990 ("OPA")

    33 U.S.C. ¶2702(a) . . . . . . . 8

    33 U.S.C. ¶2702(b)(2)(E). . . . . . . 8

    33 U.S.C. §2704(a) . . . . . . . 14

    33 U.S.C. §2704(c)(1) . . . . . . . 14

    33 U.S.C. ¶2705(a) . . . . . . . 8

    33 U.S.C. ¶2713 . . . . . . . . 8

DAVID W. ROBERTSON, <u>The Oil Pollution Act's Provisions on Damages for Economic Loss</u>, 30 MISS.C.L.REV. 157 (2011) . . 8

**Introduction and Summary of Argument**

BP's Petition for Rehearing En Banc ignores three fundamental issues:

*First,* a Business Economic Loss (or "BEL") Class Member must make an affirmative and independent evidentiary showing of causation in order to recover under the settlement. While there are a very limited number of Tourism, Seafood and other "Zone A" claims, inarguably damaged by the Spill, for which causation is thus presumed, those are not the claims that BP is complaining about. Rather, BP is complaining about a small number of businesses that have affirmatively *satisfied* the objective criteria that BP agreed would be used to demonstrate a loss caused by the Spill under the Settlement Agreement.

*Second,* BP is an Appellee before this Court, after supporting and defending the Settlement Class and obtaining approval in the District Court. BP submitted evidence from numerous economic and accounting experts who confirmed that the Settlement's causation requirements were consistent with economic realities, and from class certification and approval experts who confirmed that the class settlement satisfied the requirements of Rule 23 – including, specifically, the fact that the Class Definition was narrowly and appropriately drawn to include only class members with what BP deemed to be "colorable" claims. BP did not appeal the District Court's Judgment and Order, and therefore has no standing even to urge rehearing. It nonetheless has filed for rehearing, advancing arguments that

directly contradict its previous filings, evidence and representations in support of Rule 23 approval and certification.

*Third,* the approach urged by BP would, as a policy matter, prevent other defendants from attempting to efficiently resolve disputed claims. As noted by the Panel, defendants are entitled to settle claims pending against them even if a court might ultimately decide those claims lack merit. "Logically, requiring absent class members to prove their claims prior to settlement under Rule 23(e) would eliminate class settlement because there would be no need to settle a claim that was already proven. Such a rule would thwart the 'overriding public interest in favor of settlement' that we have recognized 'particularly in class action suits.'"[1]

The Panel's decision creates no intra-Circuit conflict. The Merits Panel analyzed the Article III standing issues under both the *Kohen* and *Denney* tests,[2] and found that standing was satisfied under either analysis. Nor does the class, under Judge Clement's *Denney* formulation, include any members who "concede" that they lack any "causally related injury".[3] Thus, even accepting Judge Clement's opinion as the view of the BEL Panel, it presents no conflict.

---

[1] *In re Deepwater Horizon*, __ F.3d __, 2014 WL 103836 (5th Cir. Jan. 10, 2014) ("SLIP OPINION") pp.22-23. Plaintiff-Appellees refer to the "Merits Panel" and "Merits Opinion" with respect to this decision, in Appeal No. 13-30095, regarding the approval of the Class Settlement under Rule 23. Plaintiff-Appellees refer to the "BEL Panel" and "BEL Opinion" with respect to the decision in Appeal No. 13-30315 issued on October 2, 2013, regarding settlement interpretation issues, reported as *In re Deepwater Horizon,* 732 F.3d 326 (5th Cir. 2013).

[2] These tests derive from *Kohen v. Pac. Inv. Mgmt. Co. LLC*, 571 F.3d 672 (7th Cir. 2009), and *Denney v. Deutsche Bank AG,* 443 F.3d 253 (2d Cir. 2006).

[3] SLIP OPINION, pp.17-18.

### **BP Is Jurisdictionally Barred From Seeking En Banc Review**[4]

BP is an appellee in No. 13-30095. The underlying appeal concerns the District Court's certification and approval of a settlement class in the *Deepwater Horizon* litigation. BP did not file a Notice of Appeal; in fact, BP was an active movant before the court below in support of the District Court's ruling. While a handful of class members did file timely notices (two having since dropped their appeals), BP chose to stand before this Court as an appellee, and did not file a cross-appeal. This Court affirmed the District Court's Order and Judgment, leaving BP in exactly the same position. Naturally, "in the absence of a cross-appeal, an appellee cannot seek to alter the judgment of the district court to enlarge his own rights." *Baca v. Ladd*, 77 F.3d 480, 481 (5th Cir. 1996).

Moreover, BP is complaining about the post-settlement implementation of the Agreement – something that was not, and could not have been, before the District Court in its December 21, 2012 ruling. As the Merits Panel observed, "under the settled law of this circuit, 'an appellate court may not consider new evidence furnished for the first time on appeal and may not consider facts which were not before the district court at the time of the challenged ruling.'" SLIP OPINION, p.20. BP's challenges to post-Settlement events is particularly improper because BP's motion is currently before the BEL Panel, which has not formally ruled on the crux of BP's newfound position.

---

[4] Plaintiff-Appellees have separately filed a Motion to Dismiss BP's Petition for Rehearing, which is respectfully incorporated by reference. *See* Doc. 00512511541.

## FACTUAL AND PROCEDURAL BACKGROUND

On April 20, 2010, the *Deepwater Horizon* exploded on BP's Macondo Well, killing eleven men, injuring more, and dumping millions of barrels of oil into the Gulf of Mexico. In the massive litigation that has ensued, BP has so far plead guilty to a host of felony charges.[5] A two-phase trial has been held on the primary aspects of BP's civil liability, including the trial of over 140,000 claims in the Transocean Limitation Action, in which BP is a defendant pursuant to Rule 14(c).

The Settlement Agreement, the product of over eight months of intense negotiations, is a 1,000-plus page document that addresses numerous claim types, including Seafood, Individual Economic Loss (IEL), Wetlands, Coastal, Real Estate Sales, Vessel of Opportunity (VoO), Vessel Damage, and Business Economic Loss (BEL) Claims. As BP warranted to the District Court, the key to the settlement is the objective definition of class membership and proof of harm. BP submitted the opinions of numerous economists, accountants and class certification experts to support the proposition that the causation and compensation frameworks were grounded in economic reality, and that the class definition was

---

[5] These guilty pleas include 11 felony counts of seaman manslaughter (18 U.S.C. §1115), one felony count of lying to Congress (18 U.S.C. §1505), criminal violations of the Clean Water Act (33 U.S.C. §§ 1319(c)(1)(A) & 1321(b)(3)), criminal violation of the Migratory Bird Treaty Act (16 U.S.C. §§ 703 & 707(a)), and one count of lying to stockholders and the SEC (15 U.S.C. §78m). In addition, a BP Engineer was recently convicted by a jury of obstruction of justice for post-spill destruction of evidence.

objectively defined with formulaic calculations to separately determine causation and compensation.[6]

Neither BP nor the other Petitioners complain about Seafood, VoO Compensation, Wetlands, Coastal, Vessel Damage or Real Estate Sales Loss Claims.    Rather, BP (joined by the Cobb and Allpar Petitioners) focus on a relatively small number of BEL Claims that have made an affirmative, independent and objective evidentiary showing that their losses were, in fact, caused by the Spill.

## Causation Is a Separate and Affirmative Requirement for Business Economic Loss Claims under the Settlement Agreement

Section 5.3.2.3 of the Settlement Agreement sets forth the "Causation Requirements For Business Economic Loss Claims":

> Business Economic Loss Claimants, unless causation is presumed, *must establish that their loss was due to or resulting from* the Deepwater Horizon Incident.    The causation requirements for such Claims *are set forth in Exhibit 4B.*

Exhibit 4B, in turn, sets forth the transparent and objective methodologies by which the Parties agreed that BEL Claimants would establish that their losses were due to or resulting from the *Deepwater Horizon* Incident.

---

[6] *See, e.g.,* GEOFFREY P. MILLER DECLARATION [Rec. Doc. 7114-16] p.6 (opining that the Class Definition "clearly and objectively defines the class in terms of time period, geographic region, and type of claim"); PROFESSOR JOHN C. COFFEE JR. DECLARATION [Rec. Doc. 7110-3] p.13 (opining that the Settlement contains "a list of easily identifiable categories of … entities who are permitted to show objective losses from that disaster").

As observed by Judge Southwick in the BEL Opinion, "Exhibit 4B of the Settlement Agreement allowed causation to be supported by loss calculations under Exhibit 4C rather than by requiring the claimant to prove that the loss had any factual relationship to BP's actions."[7]   The Settlement, in this way, utilizes objective mathematical proof rather than subjective proof that might be speculative or anecdotal.[8]

For most BEL Claims, (and virtually all of the claims that BP is complaining about), the Causation Requirements under Section 5.3.2.3 and Exhibit 4B are separate and distinct from the Compensation Methodology set forth in Section 5.3.2.4 and Exhibit 4C.

Exhibit 4B is a revenue-only test, which requires the claiming entity to demonstrate not only a downturn in revenue, but some other additional indicia that the downturn was caused by the Spill – *i.e.* either a later upturn in revenue (the V-Shaped Revenue Pattern), or a showing that a certain amount of their customers were either tourists or living in an affected zone (the Modified-V and Decline-Only Revenue Patterns), or a showing of Spill-related cancellations.  As BP's summary of the BEL Causation requirements on the following page explains:[9]

---

[7] *Deepwater Horizon,* 732 F.3d at 347 (Southwick, J., concurring).

[8] *See, e.g., Deepwater Horizon,* 732 F.3d at 346 (Southwick, J., concurring) ("The agreement simplified the claims process by making proof of loss a substitute for proof of factual causation").  The V, Modified-V, and Decline-Only Tests require additional indicia that the claimed losses are Spill-related.

[9] The graph on the following page was prepared by BP for a "tutorial" with the Claims Administrator, and has been referenced as: BUSINESS ECONOMIC LOSS CLAIMS: CAUSATION REVENUE TREND TEST (May 7, 2012) [Fifth Cir. Doc. 00512450442, at 10] [Rec. Doc. 11826-1, at 10].



Only after a claiming Entity establishes Causation under Exhibit 4B is Compensation determined under the separate and distinct methodology set forth in Exhibit 4C.[10]

To date, over 3,000 BEL Claims have been *denied* on the basis that they could not establish such causation.[11]

---

[10] This Compensation Methodology is a separate two-step process, which factors in both revenue and expenses, and which can be calculated using different months than were used to establish Causation. *See generally,* ADDENDUM TO CAUSATION REQUIREMENTS AND COMPENSATION FRAMEWORK FOR BUSINESS ECONOMIC LOSS CLAIMS [Doc. 6276-10, at pp.7-8].

[11] *See* STATUS REPORT, Ex. A (Jan. 11, 2014) [Rec. Doc. 12194-1] p.3 (3,076 Causation Denials of Business Claims).

Notably, Congress, in passing the Oil Pollution Action of 1990 ("OPA");[12]

BP, in establishing and administering its Gulf Coast Claims Facility ("GCCF");[13]

and the BP Defendants, in agreeing to the Class Definition and BEL Framework

contained within the Settlement Agreement itself;[14] all recognized that indirect

economic damages would be suffered due to ripple effects throughout a region's

economy.[15]

As noted by Judge Garza in dissent, BP agreed that "certain individuals and

entities, based on their location or the nature of their enterprise, 'are not required to

provide any evidence of causation'" as they "are entitled to a presumption."[16]

However, these are a limited set of directly harmed claimants with Tourism,

Seafood and other "Zone A" Claims – for which causation is not disputed.

Although this was the focus of Judge Garza's dissent, BP is _not_ complaining about

these awards.

---

[12] _See, e.g., In re: Deepwater Horizon,_ 808 F.Supp.2d 943, 958-966 (E.D.La. 2011) ("One significant part of OPA broadened the scope of private persons who are allowed to recover for economic losses resulting from an oil spill. OPA allows recovery for economic losses 'resulting from' or 'due to' the oil spill, regardless of whether the claimant sustained physical damage to a proprietary interest"); _see generally,_ 33 U.S.C. ¶¶ 2702(a), 2702(b)(2)(E), 2705(a), and 2713; DAVID W. ROBERTSON, The Oil Pollution Act's Provisions on Damages for Economic Loss, 30 MISS.C.L.REV. 157, 158-160 (2011).

[13] _See, e.g.,_ GCCF MAPS [Fifth Cir. Doc. 00512450443] [Rec. Doc. 11804-7 thru -11], which show significant payments by the GCCF for economic losses to businesses throughout the Class Geography, North of I-10.

[14] _See_ SETTLEMENT AGREEMENT, Sections 1.1, 1.2, and 38.78, and Exhibit 22.

[15] _See, e.g.,_ AFFIDAVIT OF ECONOMIST TIM RYAN, at 19 [Rec. Doc.12008-2] ("It is clear … the 2010 BP oil spill touched almost every business in the area of direct damage and in other areas of the Louisiana economy"); DECLARATION OF ECONOMIST PROFESSOR SEAN MICHAEL SMITH, at ¶11 (opining that the economic impact from the BP Oil Spill reverberated throughout the entire Gulf Region and throughout a spectrum of industries) [Rec. Doc. 12008-3].

[16] SLIP OPINION, p.51 (Garza, J., dissenting).

Rather, BP is complaining almost exclusively about non-tourism and non-seafood businesses in Zone C and Zone D that have _satisfied_ the objective Causation Requirements that BP agreed to in Exhibit 4B.[17]

As set forth extensively in the District Court's order of December 24, 2013 as well as in Appellees' briefing to the BEL Panel, BP's consistent position before the District Court confirmed BP's support of the BEL Causation test in Exhibit 4B as "reflect[ing] rational expectations about the economic harm that the spill could have caused businesses."[18]

Finally, it is worth noting that BP expressly agreed that the Claims Administrator and Program Vendors would be _required_ to provide Class Members with notice, assistance and multiple opportunities to submit the necessary documentation, and would thereafter be required to award Claimants the _maximum_ amount to which they were entitled under the objective formulas set forth in the Settlement Agreement.[19]

---

[17] _See, e.g.,_ APPENDIX B to Rumsey Declaration submitted by BP in Support of its Motion [Doc. 11819-2, at pp.19-48]; _see also,_ APPENDIX A [Doc. 11819-2, at pp.6-18]. (**Note** - Plaintiffs have moved the District Court to Strike the Rumsey Declaration and Appendix; _see_ Rec. Doc. 11989.)

[18] _See_ JOINT PROPOSED FINDINGS AND CONCLUSIONS [Rec. Doc. 7945, at 44] ¶124. Likely because the issue was being briefed to the BEL Panel, as opposed to the Merits Panel, Judge Garza was under a mistaken impression that the Claims Administrator's interpretation somehow relaxed or removed the causation requirement set forth in the Settlement Agreement. _See_ SLIP OPINION, p.56 (Garza, J., dissenting). In fact, BP expressly concurred in the Claims Administrator's Policy Announcement, submitted expert reports and proposed findings consistent with the interpretation, and never appealed the Policy Announcement to the District Court, much less to this Court. _See generally,_ SLIP OPINION, pp.5-7; ORDER AND REASONS (Dec. 24, 2013) [Rec. Doc. 12055], at pp.6-18, 32-35, 39-43; OPPOSITION TO BP'S EMERGENCY MOTION FOR INJUNCTION, No. 30315 [5th Cir. Doc. 00512450441], pp.14-27.

[19] _See_ SETTLEMENT AGREEMENT, Sections 4.3.7 and 4.3.8.

## THE MERITS PANEL'S DECISION PROPERLY APPLIES
## THE LAW OF THIS COURT AND THE SUPREME COURT

### All Class Claims are "Colorable"

There is no tension between the ruling of the Merits Panel and that of the BEL Panel on the question of whether the settlement includes claims that are not legally "colorable."

The BEL Panel opinion defines a "colorable" claim as one with "some possible validity," where the plaintiff "can *allege* standing and the elements necessary to state a claim on which relief can be granted." *In re Deepwater Horizon*, 732 F.3d at 340, 342 (emphasis in original). The BEL Panel took pains to show that class members need not prove that they would ultimately prevail on the merits, but only that they assert legally tenable claims: "There is a distinction here between whether a claim is colorable and whether it is meritorious. A plaintiff's claim is colorable if he can *allege* standing and the elements necessary to state a claim on which relief can be granted—whether or not his claim is ultimately meritorious—whether he can *prove* his case." *Id.* (emphasis in original).

Accordingly, the determination of whether a claim is colorable is one of pleading based on the *allegation* of standing and the necessary elements to state a claim. This is the functional equivalent of surviving a motion to dismiss, and conforms with the law of this Circuit that the standing of class members is a matter of pleading, not further evidentiary proof. *See, e.g., Mims v. Stewart Title Guar.*

*Co.*, 590 F.3d 298 (5th Cir. 2009); *In re Rodriguez,* 695 F.3d 360, 370 (5th Cir. 2012) (holding that "the possibility that some [class members] may fail to prevail on their individual claims will not defeat class membership" on the basis of the ascertainability requirement) (quoting *Forbush v. J.C. Penney Co.,* 994 F.2d 1101, 1105 (5th Cir. 1993)).

The evidence before the District Court establishes that all class members had colorable legal claims, as BP itself was the first to attest.  At the settlement approval stage, BP filed expert testimony from Professors Geoffrey Miller and John Coffee, as well as econometric experts, to support its position that the class was properly defined as comprised of those with tenable claims against BP.  As BP told the District Court:

> [T]he class definition takes pains … to exclude claims that BP does not believe ***are even colorably compensable*** under OPA or maritime law. See Miller Decl. (Ex. 15) ¶21 [quotation omitted].  The result is a class that is … carefully tailored to what the parties could reasonably agree on against the backdrop of the uniform body of OPA and maritime law that the Court has ruled is applicable….

BP MEMORANDUM IN SUPPORT OF FINAL APPROVAL [Rec. Doc. 7114-1], pp.11-12.[20]  BP was correct.  This is all that controlling law requires.

---

[20] The issues that divided the Third Circuit in *Sullivan* are inapposite here.  Judge Jordan's dissent was premised on the fact that the claims were arguably barred by *Illinois Brick* as a matter of law. *Sullivan v. DB Investments,* 667 F.3d 273, 348 (3d Cir. 2011) (en banc) (Jordan, J., dissenting).

For example, the Supreme Court in *Amchem Products, Inc. v. Windsor*, 521 U.S. 591 (1997) recognized that even future claims, which by definition are not yet colorable, may be settled in a class action assuming adequacy of representation.[21]  Further, the Supreme Court recently rejected the proposition that a litigation class must establish the impact of the challenged conduct on class members as a condition precedent to class certification, which would "put the cart before the horse." *Amgen, Inc. v. Connecticut Retirement Plans and Trust Funds*, 133 S.Ct. 1184, 1191 (2013). The burden at class certification is not to establish that the class members "will win the fray…; rather, it is to select the 'metho[d]' best suited to adjudication of the controversy 'fairly and efficiently.'" *Id.  See also Erica P. John Fund, Inc. v. Halliburton*, 131 S.Ct. 2179 (2011).

**This Case Does Not Raise any Conflict regarding Article III Standing.** [22]

While Judge Davis's opinion analyzes two lines of authority about whether the standing requirement must be established only for the named class representatives or for absent class members as well (on some threshold basis), the resolution of that issue was not necessary to rule on the propriety of this particular settlement class.  Indeed, for purposes of the issues specific to this case, the

---

[21] *See also Monsanto Co. v. Geerston Seed Farms*, 130 S.Ct. 2743 (2010) (affirming similarly broad standing to seek redress from potential future wrongs, including those implicating other causes, in a litigation context).

[22] This issue is addressed more fully in Plaintiff-Appellees' Response in Opposition to the Petitions for Rehearing En Banc submitted by the Cobb and Allpar Objectors, which is being filed contemporaneously herewith.

opinion clarifies and reconciles the jurisprudence on standing. As the Merits Panel concluded:

> BP's standing argument fails under both the *Kohen* test and the *Denney* test…. Both the named plaintiffs and the absent class members contemplated by the class definition include only persons and entities who can allege causation and injury in accordance with Article III.[23]

In explaining its reasoning under the *Denney* standard, the Court further observed that:

> Using Judge Clement's formulation of the standard, the class in this case does not include any members who "concede" that they lack any "causally related injury." This ends the Article III inquiry under the *Denney* test, which does "not require that each member of a class submit evidence of personal standing" so long as every class member contemplated by the class definition "can *allege* standing."[24]

Thus, even accepting Judge Clement's opinion as the view of the BEL Panel,[25] it does not conflict with the Merits Panel Opinion.

### *Comcast's* **Predominance Holding for Damage Calculations Is Amply Satisfied.**

The District Court's final approval order comprehensively lists the significant common factual and legal questions that unite the class, none of which BP or Appellants challenged.[26]

---

[23] SLIP OPINION, p.15.

[24] SLIP OPINION, pp.17-18 .

[25] Judge Southwick did not join in Part II of the BEL Opinion. *See Deepwater Horizon,* 732 F.3d at 346. Judge Dennis dissented. *Id.,* at 347-361.

[26] *See* ORDER AND REASONS [Rec. Doc. 8138] pp.38-44 [R.E. 1.038-44] [19883-19889].

The Merits Panel found, as have other circuits, that *Comcast Corp. v. Behrend*, 133 S.Ct. 1426 (2013) does not preclude class certification in every case where the class members' damages are not susceptible to a formula for classwide measurement. SLIP OPINION at pp. 40-42; fn.119.

*Comcast* was an antitrust case, wherein theories of liability and damages merge:  classwide impact must be proved, and a single damages formula emerges therefrom.  In *Comcast*, the plaintiffs proposed four theories of antitrust impact, the district court accepted only one, and plaintiffs' expert did not isolate the damages for each impact theory.  Hence, the class claim did not match the class proof. *Id.,* at 1430-1431.[27]

In this case, by contrast, the questions of BP's gross negligence, willful misconduct and/or violation of a Federal Regulation under OPA are all common questions whose truth or falsity have application to the claims of each and every class member, under 33 U.S.C. §2704(c)(1).[28]   Not only are these questions

---

[27] It should also be noted that *Comcast* was decided in the litigation, rather than settlement context, in which the defendant was continuing to contest the claims of absent classmembers.  As the Merits Panel here noted, "had the class in this case been certified under Rule 23 for further proceedings on the merits rather than for settlement, the district court might ultimately have had occasion to apply a stricter evidentiary standard." SLIP OPINION, p.21.

[28] The fact that BP may have, at some point, "waived" the potential class-wide limitation under §2704(a) does not extinguish the legal commonality shared by all class members, nor the common factual body of evidence teeming with common liability questions. *See, e.g.,* SUPPLEMENTAL COFFEE DECLARATION [Rec. Doc. 7726-4] ¶¶ 2-11 (citing *In re Nassau County Strip Search Cases*, 461 F.3d 219, 227-228 (2d Cir. 2006)).  The common and strict liability imposed upon BP for the benefit of all class members under OPA unites each and every class member with a question whose answer is identical with respect to each and every member of the Settlement Class.

amenable to common proof, but they have actually been the subject of a two-phase common issue Limitation and Liability Trial involving the reserved claims of thousands of class members.

In *Comcast*, the question of classwide damages was a matter for proof at trial, emerging from a battle of economic experts.  The unremarkable holding is that, in such a context, the expert's damages opinion must match the class' damages theory. *See Comcast*, 133 S.Ct. at 1433.

Damages formulae in the settlement class context are matters for negotiation, rather than proof at trial, and here the parties negotiated for almost a year to set objective criteria for proof and calculation of damages.   BP then proffered economic experts of its own to demonstrate to the District Court the direct correlation between each damages formula and the strength of the liability theories of the corresponding class members.[29]  This is why the Settlement Class, as negotiated by the parties, was somewhat narrower than the original class definition contained in the underlying "B1" Master Complaint:   BP focused its negotiating efforts on a class comprised of the claimant categories it was most likely to face at trial.   For purposes of a match between liability theory and damages formulae, this case meets any conceivable requirements of *Comcast*.

---

[29] See, for example, the DENT DECLARATION [Rec. Doc. 7114-4], FISHKIND DECLARATION [Rec. Doc. 7114-5], HENLEY DECLARATION [Rec. Doc. 7114-11], LANDRY DECLARATION [Rec. Doc. 7114-14], RICHARDSON DECLARATION [Rec. Doc. 7114-17], and SHARP DECLARATION [Rec. Doc. 7114-18], submitted in support of final approval by BP.

## CONCLUSION

For the above and foregoing reasons, for the reasons stated in Appellees' Motion to Dismiss, and for the reasons stated in Appellees' Opposition to the Petitions for Rehearing filed by the Cobb and Allpar Objectors, BP's Petition for Rehearing En Banc should be dismissed or denied.

This 6th day of February, 2014.


Respectfully submitted,


/s/ Stephen J. Herman
Stephen J. Herman
La. Bar. No. 23129
Herman Herman & Katz
820 O'Keefe Avenue
New Orleans, LA 70113
Telephone: (504) 581-4892
Fax: (504) 569-6024
E-Mail: sherman@hhklawfirm.com
*Co-Lead Class Counsel*

/s/ James Parkerson Roy
James Parkerson Roy
La. Bar No. 11511
Domengeaux Wright Roy & Edwards
556 Jefferson Street, Suite 500
Lafayette, LA 70501
Telephone: (337) 233-3033
Fax: (337) 233-2796
E-Mail: jimr@wrightroy.com
*Co-Lead Class Counsel*

Samuel Issacharoff
40 Washington Square South, 411J
New York, NY 10012
Telephone: (212) 998-6580
E-Mail: si13@nyu.edu
*Special Appeal Counsel*

Elizabeth J. Cabraser
Soren E. Gisleson
James Bilsborrow
Annika K. Martin
*Additional Counsel on Brief*

## <u>CERTIFICATE OF SERVICE</u>

We hereby certify that a true and correct copy of the foregoing Opposition will be filed electronically on <u>February</u> <u>6</u>, <u>2014</u>, and will thereby be served electronically on counsel through the Clerk's Notice of Docketing Activity.

This Opposition will further be served on all counsel of record in MDL No. 2179 *via* Lexis-Nexis File & Serve pursuant to Pre-Trial Order No. 12.

<u>/s/ Stephen J. Herman and James Parkerson Roy</u>
Stephen J. Herman and James Parkerson Roy
